**LIBERTY MUTUAL INSURANCE COMPANY, Appellant,**

v.

**John SHARP, Comptroller of the Public Accounts of the State of Texas, and James Lynaugh, Executive Director of the Texas Department of Criminal Justice, Appellees.**

No. 3–92–630–CV.

Court of Appeals of Texas, Austin.

March 16, 1994.

Rehearing Overruled May 25, 1994.

Douglas R. Drucker, Wetzel, Herron & Drucker, L.L.P., The Woodlands, for appellant.

Dan Morales, Atty. Gen., David D. Menchaca, Asst. Atty. Gen., Taxation Div., Austin, for appellees.

Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

We withdraw the opinion of this Court dated November 10, 1993, and substitute the following in its place.

Appellant, Liberty Mutual Insurance Company, filed suit against appellees John Sharp, Comptroller of Public Accounts, and James Lynaugh, Executive Director of the Texas Department of Criminal Justice (TDCJ), in their official capacities. Appellees filed a plea to the jurisdiction which the trial court granted, dismissing the suit with prejudice. We will affirm the trial court's order.

## BACKGROUND

On April 28, 1988, TDCJ entered into a contract for the construction of a pre-engineered building system with Trio Metal Buildings, Inc. To comply with state law, Trio Metal obtained payment and performance bonds from Liberty Mutual. *See* Act of May 20, 1977, 65th Leg., R.S., ch. 809, § 1, art. 5160(A), 1977 Tex.Gen.Laws 2027, 2027 (Tex.Rev.Civ.Stat.Ann. art. 5160, since amended). Trio Metal defaulted on the TDCJ contract, and Liberty Mutual paid or offered to pay $507,782.37 in claims under Trio Metal's payment bond.

At the time of its default, Trio Metal owed the State of Texas $100,279.59 in sales taxes. TDCJ owed Trio Metal an outstanding payment on the contract of approximately $300,-000. Trio Metal subsequently filed bankruptcy. During the bankruptcy proceedings, the bankruptcy court ordered that any outstanding payments on the TDCJ contract be placed in an escrow account in favor of Liberty Mutual. Pursuant to this order, the Comptroller issued a warrant payable to Trio Metal in the amount of approximately $200,-000 and delivered the warrant directly to Liberty Mutual. The Comptroller had offset Trio Metal's outstanding tax liability against the amount due under the contract.

In January 1991, Liberty Mutual filed suit to recover the $100,279.59 withheld by the Comptroller. Liberty Mutual claimed that these sums were wrongfully and unlawfully held by the TDCJ and the State. The pleadings expressly state that this suit was filed against both John Sharp and James Lynaugh in their official capacities:

> Defendant John Sharp is the Comptroller of the Public Accounts of the State of Texas, is being sued in his official capacity as the Comptroller, and may be served with process at 111 E. 17th Street, Austin, Texas. Defendant James Lynaugh is the Executive Director of The Texas Department of Criminal Justice, is being sued in his official capacity as Executive director, and may be served with process at the Brown Oil Tool Building, Spur 59, Huntsville, Texas.

Additionally, plaintiff included in its petition the following:

### JURISDICTION

Plaintiffs [sic] will have a *Resolution to Sue* presented to the 1991 Texas Legislature when it convenes in January 1991.

2. Venue is appropriate in Travis County, Texas, as this suit is being brought against officers and agents of the State of Texas in their official capacity as representatives of State of Texas agencies.

In its request for relief, Liberty Mutual prays for judgment against "defendants" for monies wrongfully appropriated and withheld. The trial court dismissed the suit for want of jurisdiction. In a single point of error, Liberty Mutual asserts that the trial court's dismissal was error because the suit is not barred by the doctrine of governmental immunity.

## GOVERNMENTAL IMMUNITY

The doctrine of governmental immunity bars Liberty Mutual's claims against John Sharp and James Lynaugh in their official capacities. This Court has previously held that a suit against a state officer in his official capacity is a suit against the state. *Pickell v. Brooks*, 846 S.W.2d 421, 424–25 (Tex.App.—Austin 1992, writ denied) (citing *Herring v. Houston Nat'l Exch. Bank*, 113 Tex. 264, 253 S.W. 813, 814–15 (1923)). The doctrine of governmental immunity ensures that the state cannot be sued without its permission. *Id.* at 424 (citing *Dillard v. Austin Indep. Sch. Dist.*, 806 S.W.2d 589, 592 (Tex.App.—Austin 1991, writ denied)); *see also Missouri Pac. R.R. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 814 (Tex. 1970).[1] As this Court has previously noted, despite abiding criticism of the justification for governmental immunity, the Texas Supreme Court has declared that the waiver of governmental immunity is a matter properly addressed to the legislature, not the courts. *See, e.g., Pickell*, 846 S.W.2d at 425; *Dillard*, 806 S.W.2d at 593 (citing *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976)).

Liberty Mutual argues that it may maintain this cause of action without legislative or statutory authority because its rights have been violated by the unlawful acts of state officials. *See Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709 (1945). However, Liberty Mutual does not sue John Sharp and James Lynaugh in their individual capacities, but rather clearly asserts claims against them in their official capacities, making this a suit against the state. *Pickell*, 846 S.W.2d at 424–25. In *Dillard*, this Court recognized that though caselaw exists supporting the proposition that unlawful acts of state officials are not acts of the State, reliance on this body of law requires that the plaintiff sue the state official in his or her individual, rather than official, capacity. *Dillard*, 806 S.W.2d at 597. The result of such a suit would be a judgment against the individual rather than against the State.

When the purpose of a suit against an officer or agency of the State is to impose liabilities on or enforce liabilities against the State, it is in effect a suit against the State, and cannot be maintained without legislative consent. *Griffin v. Hawn*, 161 Tex. 422, 341 S.W.2d 151, 152–53 (1960) ("Where the purpose of a proceeding against state officials is to control action of the State or subject it to liability, the suit is against the State and cannot be maintained without the consent of the Legislature."); *San Antonio Indep. Sch. Dist. v. State Bd. of Educ.*, 108 S.W.2d 445, 448 (Tex.Civ.App.—San Antonio 1937, no writ). In its petition, Liberty Mutual requests that it be paid money "wrongfully misappropriated" and asserts that the "[d]efendants will be unjustly enriched if they are allowed to retain this money improperly retained."[2] The money is currently held by

---

1. In recognition of the requirement that the State give its consent to be sued, plaintiffs in this case indicated in their pleadings their intent to seek a legislative waiver of governmental immunity.

2. We note that the government has the right to set off taxes owed by a defaulting contractor against a retainage such as the one at issue in this case when the surety makes its claim to that retainage under a payment bond. This is because in that situation, the surety's claim to the retainage is derivative of that of the defaulting contractor. *See United States v. Munsey Trust Co.*, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947) (addressing whether percentages retained by the government pursuant to contract are subject to set off despite the claims of a surety who has paid laborers and materialmen); *Aetna Casualty & Sur. Co. v. United States*, 435 F.2d 1082, 1984 (5th Cir.1970) (noting that the surety's claim to retainages under a payment bond is subject to set off for the defaulting contractor's taxes). By contrast, the government does not have a right to set off against a surety that completes performance for the defaulting contractor under a performance bond. *Id.; Trinity Universal Ins. Co. v. United States*, 382 F.2d 317, 321 (5th Cir.1967), *cert. denied*, 390 U.S. 906, 88 S.Ct. 820, 19 L.Ed.2d 873 (1968). In that case, the surety is a subrogee of the state rather than a creditor, and its claim to the retainage is not burdened by the taxes owed by the defaulting

the State, not by John Sharp or James Lynaugh individually. A request to recover money from the State is a suit against the State, and cannot be maintained without legislative consent. Accordingly, we hold that the trial court properly dismissed the suit with prejudice for want of jurisdiction.[3]

Liberty Mutual also asserts that the appellees' plea to the jurisdiction was procedurally flawed because: (1) Liberty Mutual was not given an opportunity to amend its pleadings; (2) appellees failed to prove lack of jurisdiction by extrinsic evidence; and (3) the plea was not properly verified. Because of the nature of subject-matter jurisdiction, Liberty Mutual's claims are without merit.

■ A court's jurisdiction is conferred by the constitution and the statutes; a court without jurisdiction cannot render a valid judgment. *City of Beaumont v. West*, 484 S.W.2d 789, 791 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.) (citing *Nevitt v. Wilson*, 116 Tex. 29, 285 S.W. 1079 (1926)). Want of subject-matter jurisdiction arrests a cause at any stage in the proceedings. *Southwestern Bell Tel. Co. v. City of Kountze*, 543 S.W.2d 871, 873 (Tex.Civ. App.—Beaumont 1976, no writ). If at any time during the trial court's proceeding it becomes apparent that the court has no lawful authority to adjudicate the issues presented, the court must dismiss the case. *City of Beaumont*, 484 S.W.2d at 791 (citing *Snyder v. Wiley Porter*, 59 Tex. 448 (1883), *overruled on other grounds by Ablowich v. Greenville Nat'l Bank*, 95 Tex. 429, 67 S.W. 881 (1902)). Liberty Mutual suggests that it should have been given an opportunity to amend its pleadings before the case was dismissed. This argument is not persuasive when the lack of subject-matter jurisdiction can only

be cured by the opposing party's consent to be sued. The purpose of special exceptions is to inform the opposing party of a defect in its pleadings so that the party may cure the defect by amendment. *Cameron v. University of Houston*, 598 S.W.2d 344, 345 (Tex. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). The trial court dismissed this suit for lack of jurisdiction, not on the merits of Liberty Mutual's case. Because we have held that this suit is barred by governmental immunity, there is nothing the plaintiff could have included in its petition that would have conferred jurisdiction on the trial court.

■ Liberty Mutual also contends that the appellees' plea to the jurisdiction was unsupported by evidence. However, the appellees were not required to present any evidence regarding the legislature's waiver of governmental immunity. Liberty Mutual's pleadings did not allege adequate grounds for jurisdiction. In deciding whether to grant a plea to the jurisdiction, the trial court must look solely to the allegations in the petition. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d at 446. Liberty Mutual's claim that appellees failed to prove that the legislature did not consent to be sued is misplaced; it is its burden to plead and prove that governmental immunity from suit has been waived. *Brownsville Navigation*, 453 S.W.2d at 813–14; *Walsh v. University of Tex.*, 169 S.W.2d 993, 993–94 (Tex.Civ.App.— El Paso 1942, writ ref'd).

We do not address Liberty Mutual's contention that the plea was not verified. This objection was not raised at the trial-court level, and appellant may not raise the issue for the first time on appeal. *See Builders Bargain Ctr., Inc. v. National Gypsum Co.*,

---

contractor. *Id.* at 320. Although these federal cases involve the Miller Act, 40 U.S.C. §§ 270a– 270d (1988), Liberty Mutual argues that they apply to cases involving the state law because it was patterned after the Miller Act. We accept this contention for the purposes of this appeal. When determining jurisdiction, the trial court considers only the allegations in the plaintiff's pleadings. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). In its petition, Liberty Mutual alleges that its right to the retainage arises from its having paid or offered to pay $507,782.37 in claims under the payment bond. Because Liberty Mutual alleges

a right to the retainage arising under its payment bond, a set off would be proper. *Munsey Trust*, 332 U.S. at 244, 67 S.Ct. at 1604; *Aetna Casualty & Sur.*, 435 F.2d at 1084; *Trinity Universal*, 382 F.2d at 320.

**3.** Because we hold that Liberty Mutual cannot maintain this suit based on a theory of improper action by state officials, we do not address its contention that section 112.108 of the Tax Code does not bar this suit. *See* Tex.Tax Code Ann. § 112.108 (West 1992).

398 S.W.2d 804, 805 (Tex.Civ.App.—San Antonio 1966, no writ).

Having concluded that the trial court properly dismissed this suit for want of jurisdiction, we overrule Liberty Mutual's point of error. We have considered Liberty Mutual's motion for rehearing, and it is also overruled. Accordingly, we affirm the trial court's order dismissing the cause with prejudice for want of jurisdiction.