cv4-741.dd.reischman 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00741-CV







Owen A. Reischman, Appellant




v.




Coopers & Lybrand; Dan Morales; Peter A. Winn; Will Pryor;


Timothy Monter; and Laurie L. Dotter, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 94-02892, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING







PER CURIAM

 

 Owen Reischman sued Dan Morales, Peter A. Winn, Will Pryor, Timothy Monter,
Laurie L. Dotter, and Coopers & Lybrand for libel. His complaint stemmed from two reports
written about the performance of the Teacher Retirement System's real estate investment division: 
(1) a Texas Attorney General report he attributes to Attorney General Morales and Assistant
Attorneys General Winn and Pryor ("AG appellees"), and (2) a report by Monter and Dotter while
they worked for Coopers & Lybrand ("C&L appellees"). The trial court dismissed the claims
against the AG appellees for want of jurisdiction. The trial court dismissed the claims against the
C&L appellees for failure to cure defects pointed out by special exceptions. Reischman appeals
both dismissals. We will affirm the judgment of the trial court.



BACKGROUND


 The standards of review for both dismissals require us to construe the pleadings
liberally in the plaintiffs' favor, look to the pleaders' intent, and accept the plaintiffs' factual
allegations and the reasonable factual inferences from those allegations. See Texas Ass'n of
Business v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993) (quoting Huston v. Federal
Deposit Ins. Corp., 663 S.W.2d 126, 129 (Tex. App.--Eastland 1983, writ ref'd n.r.e.) (dismissal
for want of jurisdiction); see also Sorokolit v. Rhodes, 889 S.W.2d 239, 240 (Tex. 1994). The
following recitation is drawn from Reischman's petition and the documents he attached to it. 

 From 1989 through 1993, Reischman was Director of Real Estate for the
investment section of the Teacher Retirement System of Texas ("TRS"). In September 1992, the
TRS executive secretary requested an opinion from the attorney general regarding the legal
implications of proposed TRS investment actions. Morales never responded directly to those
questions.

 The attorney general instead launched a broad inquiry into TRS real estate
investment practices which resulted in a publicized report questioning the practices of the
investment section Reischman headed. Morales signed the cover letter to TRS in which he stated
that the implications of the opinion request had prompted great concern in his office. He said that
he began an informal inquiry "as the chief law enforcement agency" of the state. Morales set out
the method of his inquiry, then closed, saying:



This is only a report and does not constitute any formal legal opinion of the
Attorney General. To the extent this report includes legal analysis, these are
merely preliminary observations to help the System's Board of Trustees (the
"Board") focus on pertinent issues originally raised by the System's opinion
request.



 Meanwhile, C&L's Monter and Dotter studied the TRS real estate investment
program at the request of the TRS Board of Trustees. C&L published its report about two weeks
before the AG's report was published. The reports cross-reference each other and recommend
reading the other report. C&L handed out copies of its reports at a TRS board meeting.

 Reischman alleged that the reports damaged his professional and personal reputation
and prospects by calling him dishonest, unethical, and unscrupulous. He alleged that, by
preparing and writing the informal report rather than responding solely to the opinion request,
Morales and his assistants acted outside the scope of their employment. He alleged that the
preparatory work on the C&L and the AG's reports was done simultaneously and apparently in
concert because each report urges the reader to read the other report. He alleged that the C&L
appellees either explicitly or implicitly endorsed the AG's report. He also claimed that, by
handing out their report at a TRS board meeting, the C&L appellees published the AG's report
because anyone reading the C&L report would seek out the AG's report.

 The court dismissed the action against all appellees. The AG appellees moved to
dismiss for want of jurisdiction, claiming that their actions were protected by absolute privilege. 
The C&L appellees moved to dismiss for failure to state a claim, arguing that their statements
about which Reischman complained were not reasonably capable of defamatory meaning; they also
claimed that he failed to allege actual malice on their part. The court dismissed the case against
the C&L appellees without prejudice.



DISCUSSION


 Reischman attacks the dismissal orders separately. He raises four points of error
against the dismissal of the claims against the AG appellees and one point of error against the
dismissal of the claims against the C&L appellees.



The AG appellees

 Reischman denies that the AG appellees were shielded by an absolute privilege that
stripped the court of subject matter jurisdiction. In his points of error, Reischman attacks not only
the applicability of the privilege but also the appropriateness of a plea to the jurisdiction as a
vehicle to assert that privilege.

 The type of motion. Reischman argues by point one that the court erred by
granting the plea to the jurisdiction. He argues specifically by point two that a party cannot raise
absolute privilege in a plea to the jurisdiction. He argues under both points that a plea to the
jurisdiction is a dilatory plea that can defeat the present action but leave the possibility of refiling
in a court with appropriate jurisdiction. He posits that absolute privilege is an affirmative defense
that creates an insuperable defense to the claim regardless of venue and that, therefore, the
privilege cannot be raised in a plea to the jurisdiction.

 The unique nature of absolute immunity for state officers obviates an exploration
of the parameters of dilatory pleas and affirmative defenses and their interplay. Courts have no
jurisdiction over claims against the government unless the government has consented to be sued
on the asserted issues. Liberty Mut. Ins. Co. v. Sharp, 874 S.W.2d 736, 738-39 (Tex.
App.--Austin 1994, writ denied). Suits against state officers for actions taken in their official
capacities are suits against the government. Id. at 738. Courts therefore have no jurisdiction over
claims against state officers acting in their official capacities unless the state has consented to suit
on the asserted issues. Id. A plea to the jurisdiction is appropriate to raise this issue. Id. at 739;
Bagg v. University of Tex. Medical Branch at Galveston, 726 S.W.2d 582, 585 (Tex.
App.--Houston [14th Dist.] 1987, writ ref'd n.r.e.). We overrule points one and two.

 The merits of the motion. Reischman contends by point three that the court erred
by granting the plea to the jurisdiction because his pleadings showed that the AG appellees were
acting without lawful authority and outside the absolute privilege. (1) By point four, he argues that
the AG appellees were in fact acting without lawful authority.

 As noted above, we will construe the pleadings in favor of the pleader. See Texas
Ass'n of Business, 852 S.W.2d at 446. If the petition affirmatively demonstrates an absence of
subject matter jurisdiction, the trial court lacks discretion to do anything but dismiss the case. 
Qwest Microwave, Inc. v. Bedard, 756 S.W.2d 426, 440 (Tex. App.--Dallas 1987, orig.
proceeding). This standard of review does not require us to accept all statements in the petition,
only those that allege facts. See Texas Ass'n of Business. 852 S.W.2d at 446. We are not bound
to accept Reischman's conclusion that the AG appellees acted outside the scope of their authority;
we must accept his basic factual allegations and determine whether we can reasonably infer that
they demonstrate that the AG appellees acted outside the scope of their authority. See Salazar v.
Morales, 900 S.W.2d 929, 932, n.6 (Tex. App.--Austin 1995, no writ).

 The state's constitution and statutes define the scope of the attorney general's
authority. The constitution requires him to "give legal advice in writing to the governor and other
executive officers, when requested by them, and perform such other duties as may be required by
law." Tex. Const. Ann. art. IV § 22. The Government Code requires him to issue a written
opinion letter on request of certain state officials. Tex. Gov't Code Ann. § 402.042 (West 1990). 
Reischman contends that the AG appellees exceeded their authority by conducting an informal
inquiry rather than responding directly and solely to the opinion request.

 The code and constitution neither expressly authorize nor expressly forbid informal
inquiries or preliminary reports. They do not restrict the range or type of inquiries the attorney
general may make while preparing an opinion letter. Morales stated in his cover letter, adopted
as part of the petition, that the inquiry and report were prompted by the request for an opinion;
Reischman even alleged that the request triggered the investigation "whether this result was
intended or not." Morales's statement in the cover letter that any legal analysis in the report was
a preliminary observation places the report within the opinion letter process. On the facts alleged,
the AG appellees acted within the scope of their authority when producing the report. We
overrule points three and four.



The C&L appellees

 By point five, Reischman attacks the court's grant of the C&L appellees' motion
to dismiss. If the trial court sustains a party's special exceptions, the opposing party must be
given an opportunity to amend its petition before the case is dismissed. Stinnett v. Williamson
County Sheriff's Dept., 858 S.W.2d 573, 575 (Tex. App.--Austin 1993, writ denied). If the
pleader fails to cure the defect through amendment, the court may dismiss the case. Massey v.
Armco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983); Stinnett, 858 S.W.2d at 575.

 Reischman filed a first amended original petition in response to the agreed order
sustaining the C&L appellees' special exceptions. The C&L appellees moved to dismiss because
the amended petition failed to address these special exceptions: (1) that the statements of which
Reischman complained in the C&L report were not reasonably capable of defamatory meaning,
and (2) that he failed to allege actual malice by the C&L appellees. The court considered the
second amended petition, filed on the day of the hearing. The amendment had no bearing on the
first exception. The court granted the motion without specifying a basis.

 We must decide whether Reischman met the first special exception by assessing
whether he alleged that the C&L appellees made a defamatory statement--one that



tends to injure a living person's reputation and thereby expose the person to public
hatred, contempt or ridicule, or financial injury or to impeach any person's
honesty, integrity, virtue, or reputation or to publish the natural defects of anyone
and thereby expose the person to public hatred, ridicule, or financial injury.



Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 1986). Reischman supported his allegations
regarding the C&L appellees' involvement by attaching excerpts from the C&L report to his
petition and purporting to adopt the entire report as if set out fully therein.

 The C&L report excerpts show that, despite his general allegations of defamation,
the C&L appellees made no defamatory statement. Only two paragraphs in the excerpts refer to
the AG's report. The first discusses the existence of the AG's probe, its methods, and the fact
that the AG's probe exceeds the scope of the C&L investigation. The second paragraph provides:



Our report on potential conflicts of interest cannot be viewed as an exhaustive
inquiry of all potential conflicts of interest; however, our findings with respect to
the work we performed have been reported to the Board and are included in our
report. We understand that since the scope and extent of the AG's study goes
beyond the documentation available to us, their report may include findings
different from or in addition to ours contained herein. Therefore, we recommend
that the Board consider the information in both reports.



These references do not mention, allude to, or defame Reischman. 

 We also conclude that the petition, even construed most favorably to Reischman,
does not show that the C&L appellees adopted, endorsed, or published the AG's report so as to
constitute the making of a defamatory statement. Though he conclusorily alleged that the C&L
appellees adopted and endorsed the AG's report, the excerpt from the C&L report in his petition
plainly shows that they did not; rather, the C&L appellees' report stated that the AG's conclusions
might differ from or add to the conclusions in the C&L report. Reischman's contention that C&L
published the AG's report by recommending that the Board read the AG's report fails because
C&L's report does not contain any language or paraphrased language from the AG's report. Even
under the standard of review, we decline to credit his general allegations of defamation when
faced in the petition with the non-defamatory nature of the appellees' actual statements. 
Reischman's amended petitions did not meet the first special exception.

 Reischman argues that his case should nevertheless have survived because he also
alleged that the C&L appellees conspired to publish the AG's report. At the hearing on the
motion to dismiss, the trial court rejected his claim that he had pleaded conspiracy. The essential
elements of a conspiracy are "(1) two or more persons; (2) an object to be accomplished; (3) a
meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5)
damages as the proximate result." Massey v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983). 
Reischman failed to allege that the C&L appellees agreed on the object or course of action with
the AG appellees and that the C&L appellees recommended reading the AG report to implement
an agreement to defame him.

 Reischman relies on a case that held that all persons who aid, assist, or advise the
publication or circulation of libelous material are responsible therefor. See Belo v. Fuller, 19
S.W. 616, 617 (Tex. 1892). The Belo court held that merely being a stockholder or on the board
of directors was insufficient to create liability absent such active involvement. Id. We decline
to stretch the Belo case to reach the conduct by the C&L appellees who were not in the AG's
office and had less official control over the publication of the AG's report. We overrule point
five.

 The C&L appellees assert by crosspoint that the court erred by failing to dismiss
Reischman's claims with prejudice. The court's decision was within its discretion. We overrule
the crosspoint.



CONCLUSION


 We hold that Reischman did not assert reversible error against the trial court's
dismissals of the case against the AG appellees. His factual allegations show that the AG
appellees acted within the scope of their authority while preparing the AG's report. A plea to the
jurisdiction is an acceptable method to raise the issue of absolute privilege.

 Neither did Reischman raise reversible error against the trial court's dismissal of
the case against the C&L appellees. Reischman failed to correct the pleading deficiencies pointed
out by the appellees' special exceptions. He failed to allege facts supporting each element of
conspiracy.

 The court did not err by dismissing the case against any of the appellees. Neither
did the court err reversibly by dismissing the case against the C&L appellees without prejudice. 
We affirm the judgment.


Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: November 8, 1995

Do Not Publish

1.   Reischman does not otherwise attack the applicability of the absolute privilege to
these defendants in the capacities in which they were sued.


r report may include findings
different from or in addition to ours contained herein. Therefore, we recommend
that the Board consider the information in both reports.



These references do not mention, allude to, or defame Reischman. 

 We also conclude that the petition, even construed most favorably to Reischman,
does not show that the C&L appellees adopted, endorsed, or published the AG's report so as to
constitute the making of a defamatory statement. Though he conclusorily alleged that the C&L
appellees adopted and endorsed the AG's report, the excerpt from the C&L report in his petition
plainly shows that they did not; rather, the C&L appellees' report stated that the AG's conclusions
might differ from or add to the conclusions in the C&L report. Reischman's contention that C&L
published the AG's report by recommending that the Board read the AG's report fails because
C&L's report does not contain any language or paraphrased language from the AG's report. Even
under the standard of review, we decline to credit his general allegations of defamation when
faced in the petition with the non-defamatory nature of the appellees' actual statements. 
Reischman's amended petitions did not meet the first special exception.

 Reischman argues that his case should nevertheless have survived because he also
alleged that the C&L appellees conspired to publish the AG's report. At the hearing on the
motion to dismiss, the trial court rejected his claim that he had pleaded conspiracy. The essential
elements of a conspiracy are "(1) two or more persons; (2) an object to be accomplished; (3) a
meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5)
damages as the proximate result." Massey v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983). 
Reischman failed to allege that the C&L appellees agreed on the object or course of action with
the AG appellees and that the C&L appellees recommended reading the AG report to implement
an agreement to defame him.

 Reischman relies on a case that held that all persons who aid, assist, or advise the
publication or circulation of libelous material are responsible therefor. See Belo v. Fuller, 19
S.W. 616, 617 (Tex. 1892). The Belo court held that merely being a stockholder or on the board
of directors was insufficient to create liability absent such active involvement. Id. We decline
to stretch the Belo case to reach the conduct by the C&L appellees who were not in the AG's
office and had less official control over the publication of the AG's report. We overrule point
five.

 The C&L appellees assert by crosspoint that the court erred by failing to dismiss
Reischman's claims with prejudice. The court's decision was within its discretion. We overrule
the crosspoint.



CONCLUSION


 We hold that Reischman did not assert reversible error against the trial court's
dismissals of the case against the AG appellees. His factual allegations show that the AG
appellees acted within the scope of