Opinion issued December 19, 2002












In The
Court of Appeals
For The
First District of Texas




NO. 01-00-01245-CV




DEPARTMENT OF PROTECTIVE AND REGULATORY SERVICES, 
Appellant

V.

ANNJEANETTE SCHUTZ AND MARK SCHUTZ, Appellees




On Appeal from the 306th District Court
Galveston County, Texas
Trial Court Cause No. 00-CV-0194




O P I N I O NThis is an appeal from a bench trial in a declaratory-judgment action. The
appellees, AnnJeanette and Mark


 Schutz (“the Schutzes”), brought against the
Department of Protective and Regulatory Services (“the department”). The Schutzes
sought a declaratory judgment that the definition of “neglect” in Family Code section
261.001(4)(B)(i) was unconstitutionally vague as applied to AnnJeanette and that
AnnJeanette Schutz was not guilty of neglect. Tex. Fam. Code Ann. §
261.001(4)(B)(I) (Vernon 2002). The district court enjoined the department from
holding the administrative hearing. After a bench trial, the district court rendered 
judgment that AnnJeanette Schutz was not guilty of neglect and that section
261.001(4)(B)(i) was unconstitutionally vague on its face, and awarded attorney’s
fees to the Schutzes’ counsel in the amount of $32,487.50. In five issues, the
department argues the district court erred in rendering judgment in the Schutzes’
favor because: (1) the district court did not have subject-matter jurisdiction; (2) the
district court should have abated the case because an administrative hearing on the
same subject was pending; (3) the district court should have granted the department’s
motion for judgment because there were administrative proceedings pending and
declaratory relief was not a proper remedy; (4) the definition of neglect is not
unconstitutionally vague; and (5) AnnJeanette Schutz was guilty of neglect under the
Family Code.
          We reverse the district court ’s judgment and dismiss the cause.
Background
          On September 15, 1999, Andrea O., a 14-month-old foster child who lived with
the Schutzes drowned in the backyard swimming pool at the Schutz home. On the
evening Andrea O. drowned, Mark Schutz was at soccer practice with the Schutzes’
son. Andrea O. was watching television in the living room with another foster child. 
AnnJeanette Schutz was on the telephone in the kitchen and, although Andrea O.
periodically joined AnnJeanette in the kitchen, AnnJeanette did not continuously
visually supervise Andrea O. While AnnJeanette was on the telephone, Andrea O.
somehow entered the backyard and drowned in the pool.
          The department began an investigation that evening by interviewing the
Schutzes. In the Schutz home, two doors lead to the backyard, and therefore, the
pool: a heavy wooden door that a child could not open and a sliding glass door that
was typically locked. Andrea O. had never exhibited she could open either door by
herself. However, AnnJeanette told the department investigator that it may have been
possible for Andrea O. to open the sliding door if it were unlocked. The department,
based on its investigation, concluded the sliding door had been left unlocked and that
Andrea O. gained access to the pool by opening the door herself.
          The department found that AnnJeanette Schutz was guilty of “neglectful
supervision” because she did not maintain adequate knowledge of Andrea O.’s
whereabouts to prevent the child from gaining access to the pool and because there
were not adequate barriers to prevent Andrea O. from reaching the pool. AnnJeanette
Schutz requested an administrative review. The department upheld the finding of
neglect.
          AnnJeanette then appealed the finding of neglect to the State Office of
Administrative Hearings (“SOAH”), and SOAH scheduled a hearing. However,
before SOAH could conduct the hearing, the Schutzes filed suit in district court and
obtained a temporary restraining order to prohibit SOAH from proceeding with the
hearing.
          The department filed a plea to the jurisdiction and a plea in abatement in which
it argued the district court did not have jurisdiction because the Schutzes had not
exhausted their administrative remedies and, in the alternative, the district court 
should abate the proceeding because of the hearing pending before SOAH. The
department also sought dismissal of its executive director, Jim Hines, who was named
as a defendant in the district court proceeding. The district court dismissed Hines, but
denied the department’s plea to the jurisdiction and plea in abatement.
          After a bench trial, the district court rendered judgment that the Family Code
definition of “neglect” was unconstitutional as applied to AnnJeanette and that
AnnJeanette had not neglected Andrea O. In addition to the points of error related
to the judgment against the department, the Schutzes’ motion to dismiss the appeal
is before this Court.
Motion to Dismiss
          Appellees argue the appeal should be dismissed because the department waived
its right to appeal. This argument is based on an exchange between counsel and the
district court during the hearing on the department’s plea to the jurisdiction:
Mr. Anderson (counsel for the Schutzes):Your Honor, the only
reason he’s [Jim Hines, Executive Director of the department] in
the lawsuit in his official capacity is if the Orders need to be
issued, the Court can order them.
Mr. Russell:Your Honor, I’ll just stipulate. If you order
the agency to do something, I’ll see that it’s done.
The Court:I believe you.
Mr. Anderson:No objection, Your Honor. We’ll proceed
against the department.

          Citing In re Long, appellees argue that a party may, by agreement, waive its
right to appeal and that is what the department did when its counsel made the
statement quoted above. 946 S.W.2d 97, 99 (Tex. App.—Texarkana 1997, no writ). 
Long, however, dealt with a situation in which a party waived its right to appeal in
a written settlement document. Id. The court stated that because the party had
expressly agreed not to appeal from the orders at issue in the appeal, it had no option
but to hold him to the terms of his agreement.


 Id. 
          Waiver is the intentional relinquishment of a known right or intentional
conduct inconsistent with claiming that right. Robinson v. Robinson, 961 S.W.2d
292, 299 (Tex. App.—Houston [1st Dist.] 1997, no writ); Gilbert v. Pettiette, 838
S.W.2d 890, 894 (Tex. App.—Houston [1st Dist.] 1992, no writ). In determining if
a waiver has in fact occurred, the court must examine the acts, words, or conduct of
the parties and it must be “unequivocally manifested” that it is the intent of the party
to no longer assert the right. Robinson, 961 S.W.2d at 299; Enterprise-Laredo v.
Hachar’s, 839 S.W.2d 822, 835-36 (Tex. App.—San Antonio 1992, no writ). 
“Although waiver is ordinarily a question of fact, when the facts and circumstances
are admitted or clearly established, the question becomes one of law.” Motor Vehicle
Bd. v. El Paso Indep. Auto. Dealers Ass’n, 1 S.W.3d 108, 111 (Tex. 1999); Tenneco,
Inc. v. Enter. Prods., 925 S.W.2d 640, 643 (Tex. 1996).
          The facts in this case are not in dispute. Originally, both the department and
its executive director, Jim Hines, were defendants in district court. Both filed a plea
to the jurisdiction. Taken in context, the department’s counsel was reassuring the
district court that, if the district court dismissed Mr. Hines from the lawsuit, the
department would comply with court orders. The statement was made pretrial, not
(as in Long) in relation to a settlement or arbitration agreement. Counsel was
referring to compliance with court orders generally, not a specific order or judgment
that had already been rendered. There was no express mention of the department
waiving its right to appeal; if anything, it was agreeing only to waive any complaint
regarding Mr. Hines’ absence from the lawsuit. It was apparently based on this
representation that the district court dismissed Mr. Hines. Based on these facts and
the circumstances surrounding the exchange, the department simply did not
unequivocally manifest an intention to waive its right to appeal.
          We overrule the Schutzes’ motion to dismiss the appeal.

Plea to the Jurisdiction
          In its first issue, the department argues the district court erred when it denied
the department’s plea to the jurisdiction. The department’s plea was based on its
argument that SOAH had primary jurisdiction of the case because the Schutzes failed
to exhaust their administrative remedies before filing suit.
A.      Standard of Review
          The plaintiff bears the burden of alleging facts affirmatively showing that the
trial court has subject-matter jurisdiction. Texas Ass’n of Bus. v. Texas Air Control
Bd., 852 S.W.2d 440, 446 (Tex.1993); Texas Dep’t of Criminal Justice v. Miller, 48
S.W.3d 201, 203 (Tex. App.—Houston [1st Dist.] 1999), rev’d on other grounds, 51
S.W.3d 583, 589 (Tex. 2001). A plea to the jurisdiction is appropriate whenever a
governmental unit believes that the trial court lacks subject-matter jurisdiction. 
Miller, 48 S.W.3d at 203; Texas Dep’t of Transp. v. Jones, 983 S.W.2d 90, 91-92
(Tex. App.—Corpus Christi 1998) rev’d on other grounds, 8 S.W.3d 636, 637 (Tex.
1999). When deciding whether to grant a plea to the jurisdiction, the trial court must
look solely to the allegations in the petition. Miller, 48 S.W.3d at 204; Liberty Mut.
Ins. Co. v. Sharp, 874 S.W.2d 736, 739 (Tex. App.—Austin 1994, writ denied). The
court of appeals must take the allegations in the petition as true and construe them in
favor of the pleader. Texas Ass’n of Bus., 852 S.W.2d at 446; Miller, 48 S.W.3d at
204. Whether a trial court has subject-matter jurisdiction is a question of law and is
reviewed de novo. Mayhew v. Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998); Miller,
48 S.W.3d at 204.
B.      Primary Jurisdiction and Exhaustion of Administrative Remedies
          Primary jurisdiction is a judicially-created doctrine in which a court may
dismiss or stay an action pending a resolution of some portion of the case by an
administrative agency. Harris County Mun. Util. Dist. No. 48 v. Mitchell, 915
S.W.2d 859, 863-64 (Tex. App.—Houston [1st Dist.] 1995, writ denied); Shell
Pipeline Corp. v. Coastal States Trading, Inc., 788 S.W.2d 837, 842 (Tex.
App.—Houston [1st Dist.] 1990, writ denied). Under the doctrine of primary
jurisdiction, a matter delegated by statute to an administrative agency for initial action
must be determined by that agency before the matter may be reviewed by a court. 
Harris County, 915 S.W.2d at 864; Pedraza v. Tibbs, 826 S.W.2d 695, 699 (Tex.
App.—Houston [1st Dist.] 1992, writ dism’d w.o.j.). “Primary jurisdiction” applies
“whenever enforcement of the claim requires the resolution of issues which, under a
regulatory scheme, have been placed within the special competence of an
administrative body.” Shell Pipeline, 788 S.W.2d at 842 (quoting United States v. W.
Pac. R.R., 352 U.S. 59, 64, 77 S. Ct. 161, 165 (1956)). It is especially appropriate to
apply the doctrine when uniformity of certain types of administrative decisions is
desirable, or when there is a need for the expert and specialized knowledge of the
agencies. Shell Pipeline, 788 S.W.2d at 842. However, the phrase “primary
jurisdiction” indicates that both an administrative agency and a court have subject
matter jurisdiction. Id. Because the doctrine presumes the district court had subject
matter jurisdiction, we consider it below in connection with whether the district court
should have abated the case.


 Therefore, in this context we consider only whether the
Schutzes were required to, and did, exhaust their administrative remedies.
          Under the doctrine of exhaustion of administrative remedies, when the
legislature has provided a method of administrative review, a complainant must first
exhaust his administrative remedies before filing suit. Firefighters’& Police Officers’
Civil Serv. Comm’n v. Herrera, 981 S.W.2d 728, 732 (Tex. App.—Houston [1st
Dist.] 1998, pet. denied); Pedraza, 826 S.W.2d at 699. In addition, if the legislature
mandates that a claimant exhaust administrative remedies, the mandate is the
equivalent of a legislative investiture of exclusive original jurisdiction in the
administrative agency. See Davis v. Methodist Hosp., 997 S.W.2d 788, 793 (Tex.
App.—Houston [1st Dist.] 1999, no pet.). The exhaustion of administrative remedies
is therefore a jurisdictional issue. Id. However, when there is no such provision in
a statute, there is no jurisdictional issue. Id. 
 
C.      Did The Statutory Scheme Require Exhaustion of Remedies?
          The Human Resources Code and the Family Code both contain provisions that
relate to the department’s functions of regulating child-care facilities and
investigating abuse and neglect.
          The Human Resources Code created the department. Tex. Hum. Res. Code
Ann. § 40.002 (Vernon 2001). The department has primary responsibility for: (1)
providing protective services for children and elderly and disabled persons; (2)
providing family support and family-preservation services which respect the
fundamental right of parents to control the education and upbringing of their children;
(3) regulating child-care facilities and child-care administrators; and (4)
implementing and managing programs intended to provide early intervention or
prevent at-risk behaviors that lead to child abuse, delinquency, running away,
truancy, and dropping out of school. Id. 
          The department is subject to the Administrative Procedure Act. Tex. Hum.
Res. Code Ann. § 40.006 (Vernon 2001); Tex. Govt. Code Ann. §§ 2001.001-.902
(Vernon 2000 & Supp. 2002). SOAH conducts hearings in contested cases for the
department. Tex. Hum. Res. Code Ann. § 40.066 (Vernon 2001). 
          Chapter 42 of the Human Resources Code sets out the duties and
responsibilities relating to child-care-licensing programs. The Shutzes were licensed
and regulated as a foster care facility under the standards and rules set up in that
chapter. See Tex. Human Res. Code Ann. § 42.001-.111. (Vernon 2001 & Supp.
2002). The purpose of that chapter is to protect the health, safety, and well-being
of the children of the State who reside in child-care facilities by establishing
statewide minimum standards for their safety and protection and by regulating the
facilities. Tex. Hum. Res. Code Ann. § 42.001 (Vernon Supp. 2002). 
          The Family Code governs how the department conducts investigations of child
abuse and neglect. See Tex. Fam. Code Ann. § 261.001-.409 (Vernon 2002).
Subchapters D and E of Chapter 261 require that the department conduct the
investigations in a certain manner and to make determinations relating to those
investigations. Tex. Fam. Code Ann. §§ 261.001-.316 (Supchapter D), 261.401-409
(Subchapter E) (Vernon 2002).
          Family Code section 261.301 (part of subchapter D) provides:
(a) . . . [T]he department or designated agency shall make a prompt and
thorough investigation of a report of child abuse or neglect allegedly
committed by a person responsible for a child’s care, custody, or welfare
. . . .
 
(b) A state agency shall investigate a report that alleges abuse or neglect
occurred in a facility operated, license, certified, or registered by that
agency as provided by Subchapter E.
Tex. Fam. Code Ann. § 261.301(a) (Vernon 2002) (emphasis added). 
          Family Code section 261.401, the relevant portion of subchapter E to which
section 261.301 refers, states, “[a] state agency that operates, licenses, certifies, or
registers a facility in which children are located shall make a prompt, thorough
investigation of a report that a child has been or may be abused, neglected, or
exploited in the facility. The primary purpose of the investigation shall be the
protection of the child.” Tex. Fam. Code Ann. § 261.401(b) (Vernon 2002)
(emphasis added).
          The department argues that chapter 42 of the Human Resources Code chapter
42 applies to the Schutzes and that it contains a provision requiring exhaustion of
remedies. The Schutzes argue that Family Code chapter 261 rather than Human
Resources Code chapter 42 governs the investigation of allegations of neglect, and
chapter 261 expressly provides an accused need not exhaust its administrative
remedies before seeking judicial review.
          The purpose of chapter 42 is to:
protect the health, safety, and well-being of the children of the state who
reside in child-care facilities by establishing statewide minimum
standards for their safety and protection and by regulating the facilities
through a licensing program or by requiring child-care facilities to be
regulated by alternative accreditation bodies.

Tex. Hum. Res. Code Ann. § 42.001 (Vernon Supp. 2002). A “child-care facility”
means:
 
a facility licensed, certified, or registered by the department to provide
assessment, care, training, education, custody, treatment, or supervision
for a child who is not related by blood, marriage, or adoption to the
owner or operator of the facility, for all or part of the 24-hour day,
whether or not the facility is operated for profit or charges for the
services it offers.

Tex. Hum. Res. Code Ann. § 42.002(3) (Vernon Supp. 2002). According to the
department, the Schutzes operate a foster home, and therefore must comply with
chapter 42. By extension, the department argues, chapter 42 incorporates the
requirements of the Government Code that a “person who has exhausted all
administrative remedies available within a state agency and who is aggrieved by a
final decision in a contested case is entitled to judicial review . . . .” Tex. Gov’t
Code Ann. § 2001.171 (Vernon 2000).
          With respect to the remedies available within the department, an “alleged
perpetrator”


 about whom a finding of child abuse or neglect is to be released or
against whom an adverse action is to be taken by the department is entitled to a
hearing under the Administrative Procedures Act. 40 Tex. Admin. Code §§
730.1701, .1702 (2002). After the administrative law judge has rendered a final
decision, either party may file a written motion for rehearing. 40 Tex. Admin. Code
§ 730.1716(e), (g) (2002).
          The Schutzes counter that Human Resources Code chapter 42 does not apply
to “an agency foster home or an agency foster group home” and that because they
maintain an “agency foster home,”


 they are exempt from its exhaustion-of-remedies
requirement. They further counter that the Family Code chapter 261 governs
investigations of child abuse or neglect, and it is that statute which determines
whether they must exhaust their remedies before pursuing a judicial remedy. 
Foster Home or Agency Foster Home?
            Under chapter 42, a “foster home” means “a child-care facility that provides
care for not more than six children for 24 hours a day.” Tex. Hum. Res. Code Ann.
§ 42.002(6) (Vernon Supp. 2002). An “agency foster home” means “a facility that
provides care for not more than six children for 24 hours a day, is used only by a
licensed child-placing agency, and meets department standards.” Tex. Hum. Res.
Code Ann. § 42.002(11) (Vernon Supp. 2002). A “child-placing agency” means:
a person, including an organization, other than the natural parents or
guardians of a child who plans for the placement of or places a child in
a child-care facility, agency foster home, agency foster group home, or
adoptive home.
Tex. Hum. Res. Code Ann. § 42.002(12) (Vernon Supp. 2002).
          The Schutzes argue they operate an agency foster home because the department
is a “child-placing agency” within the meaning of the statute. The department argues
the Schutzes operate a foster home because they are directly licensed by the
department rather than a private child-placing agency.
          In construing a statute, our objective is to determine and give effect to the
legislature’s intent. See Albertson’s, Inc. v. Sinclair, 984 S.W.2d 958, 960 (Tex.
1999); Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 484
(Tex. 1998). We first look at the statute’s language and presume that the legislature
intended the plain meaning of its words. See Fleming Foods v. Rylander, 6 S.W.3d
278, 282 (Tex. 1999); Albertson’s, 984 S.W.2d at 960. We then consider the object
sought to be obtained, circumstances under which the statute was enacted, legislative
history, consequences of a particular construction, and administrative construction
of the statute. See Tex. Gov’t Code Ann. § 311.023 (Vernon 1998); Union Bankers
Ins. Co. v. Shelton, 889 S.W.2d 278, 280 (Tex.1994). We do this regardless of
“whether or not the statute is considered ambiguous on its face.” Tex. Gov’t Code
Ann. § 311.023 (Vernon 1998). Finally, it is a rule of statutory construction that
every word of a statute must be presumed to have been used for a purpose. Cameron
v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981); Eddins-Walcher Butane
Co. v. Calvert, 298 S.W.2d 93, 96 (Tex. 1957). 
          The legislature opted to draw a distinction between “foster homes” and “agency
foster homes” that turned on whether a child-placing agency acted as an intermediary
between the foster home and the department. We see no indication the legislature
intended the department to be considered a “child-placing agency.” Instead, the
statute’s language apparently sought to treat foster homes overseen by a child-placing
agency differently because the private agency is held accountable for problems in its
foster homes. Further, the Schutzes’ construction would essentially render all foster
homes “agency foster homes” regardless of whether they are licensed directly by the
department or by a private child-placing agency. This would render the distinction
made by the legislature meaningless. Therefore, we hold that the Schutzes operated
a “foster home” within the meaning of the Human Resources Code.
Application of the Family Code
          Under the Family Code, the department shall investigate reports of child abuse
or neglect allegedly committed by a “person responsible for the child’s care, custody,
or welfare.” Tex. Fam. Code Ann. § 261.301(a) (Vernon 2002). A “person
responsible for the child’s care, custody, or welfare” includes a foster parent. Tex.
Fam. Code Ann. § 261.001(5)(A) (Vernon 2002). Section 261.309 provides for
informal review of department investigations of abuse. Tex. Fam. Code Ann. §
261.309 (Vernon 2002). Under that section, a department employee in administration
who was not involved in or did not directly supervise the investigation may, at the
accused’s request, review the investigation and sustain, alter, or reverse the
department’s original findings. Id. at § 261.309(c). The Schutzes argue that because
section 261.309(e) provides that a “person is not required to exhaust the remedies
provided by this section before pursuing a judicial remedy provided by law,” they
were not required to submit to a hearing before SOAH before filing suit in district
court.
          We disagree. Section 261.309(e) states that a person who allegedly abused or
neglected a child need not request an internal review of the department’s
investigation before pursuing a judicial remedy. See 40 Tex. Admin. Code §
730.1702 (2002). In other words, section 261.309(e) does not confer a right on the
Schutzes to resort to filing suit in district court without submitting to a formal
administrative hearing. See 40 Tex. Admin. Code §§ 730.1701-1716 (2002). 
          Further, at least with respect to allegations of abuse or neglect that occurred in
a foster home, a separate section of the Family Code governs: “a state agency shall
investigate a report that alleges abuse or neglect occurred in a facility operated,
licensed, certified, or registered by that agency as provided by Subchapter E.”


 Tex.
Fam. Code Ann. § 261.301(b) (Vernon 2002). In conducting an investigation for
such a facility, the department shall perform the investigation as provided by
Subchapter E (not Subchapter D, the subchapter on which the Schutzes rely) and the
Human Resources Code. Id.; Tex. Fam. Code Ann. §§ 261.401-.409 (Vernon
2002). As noted above, the definition of “child-care facility” includes a “foster
home.” See Tex. Hum. Res. Code Ann. § 42.002(3), (6) (Vernon Supp. 2002). In
other words, when the alleged abuse occurred in a foster home, the department
conducts the investigation under Family Code sections 261.401-.409 and Human
Resources Code chapter 42. Because the Family Code provision that deals with
investigations of abuse or neglect in a foster home refers back to the Human
Resources Code (and therefore incorporates the exhaustion-of-remedies requirement),
the Schutzes were required to submit to an administrative hearing regardless of
whether the Human Resources Code or the Family Code applies. 
Additional Jurisdictional Considerations
          In addition to the jurisdictional issues discussed above, the consideration of
sovereign immunity also affects this case. No right of judicial review from the action
of an administrative agency exists unless a statute provides for such review, the action
violates constitutional procedural due process, or the constitution waives the state’s
immunity from suit. Southwest Airlines Co. v. Texas High-Speed Rail Auth., 867
S.W.2d 154, 157 (Tex. App.—Austin 1993, writ denied); see City of Port Arthur v.
S.W. Bell Tel. Co., 13 S.W.3d 841, 845 (Tex. App.—Austin 2000, no pet.). Although
the reasoning behind this general rule is usually unstated, the rule is a necessary
corollary to the doctrine of sovereign immunity. Southwest Airlines, 867 S.W.2d at
157.
          Absent specific legislative authorization, persons aggrieved by an
administrative agency’s action have no recourse in the courts due to the first principle
of the doctrine of sovereign immunity—the state as sovereign cannot be sued without
its permission. Id.; see Hosner v. De Young, 1 Tex. 764, 769 (1847); Dillard v.
Austin Indep. Sch. Dist., 806 S.W.2d 589, 592 (Tex. App.—Austin 1991, writ
denied). The doctrine bars a suit for judicial review against the state unless the state
has expressly given its consent to be sued. Dillard, 806 S.W.2d at 592; see Missouri
Pac. R.R. v. Brownsville Navigation Dist., 453 S.W.2d 812, 814 (Tex. 1970). A suit
against an agency of the state is considered to be a suit against the state. Id.; see Lowe
v. Texas Tech Univ., 540 S.W.2d 297, 298 (Tex. 1976). The second principle of the
doctrine of sovereign immunity is that the state has immunity from liability even
though the state has consented to be sued. Dillard, 806 S.W.2d at 592.
          There is no statutory law affording an aggrieved party judicial review of a
formal administrative hearing under these circumstances, even had the Schutzes
submitted to the hearing. See Carrizales v. Dep’t of Protective & Regulatory Servs.,
5 S.W.3d 922, 924 (Tex. App.—Austin 1999, pet. denied). In Carrizales, the Austin
Court of Appeals noted the Family Code authorizes the department to conduct
investigations and make determinations in reported cases of abuse or neglect of
children. See Tex. Fam. Code Ann. § 261.301(a), (e)(1) & (2) (Vernon 2002). If the
name of a person found to have committed neglect of a child is placed in the central
registry governing future employment with children, then that individual is entitled
to a SOAH hearing before his name may be released. See Carrizales, 5 S.W.3d at
924; 40 Tex. Admin. Code § 730.1702 (2002). Pursuant to that authority, the
hearing is held before an administrative law judge of SOAH, and the administrative
law judge, after hearing evidence, makes findings of fact and conclusions of law and
issues a final decision. Carrizales, 5 S.W.3d at 924. There is no provision for
judicial review of the administrative law judge’s order.
          In Carrizales, the appellant relied solely on the Administrative Procedure Act
as a basis for his suit in district court. Id.; see Tex. Gov’t Code Ann. § 2001.171
(Vernon 2000). However, the Austin court has held in numerous opinions that
section 2001.171 is a procedural provision that does not confer subject-matter
jurisdiction on the district court to entertain a petition for judicial review unless
review is authorized under the agency’s enabling legislation or another statutory
provision. Carrizales, 5 S.W.3d at 924; P.R.I.D.E. v. Texas Worker’s Comp.
Comm’n, 950 S.W.2d 175, 180 (Tex. App.—Austin 1997, no writ); Texas Dep’t of
Transp. v. T. Brown Contractors, Inc., 947 S.W.2d 655, 658 (Tex. App.—Austin
1997, writ denied); Fireman’s Pension Comm’n v. Jones, 939 S.W.2d 730, 732-33
(Tex. App.—Austin 1997, no writ); Employees Ret. Sys. of Texas v. Foy, 896 S.W.2d
314, 316 (Tex. App.—Austin 1995, writ denied); S.C. San Antonio, Inc. v. Texas
Dep’t of Human Servs., 891 S.W.2d 773, 776 (Tex. App.—Austin 1995, writ denied);
Motorola, Inc. v. Bullock, 586 S.W.2d 706, 708-09 (Tex. Civ. App.—Austin 1979,
no writ).
          The Schutzes have not identified, either in the district court or in their brief to
this Court, any statute under which the legislature has waived governmental immunity
from suit that would entitle them to judicial review of the department’s finding of
neglect. Carrizales and our search for such a statute indicates there is not one. 
Therefore, had the Schutzes complied with the administrative procedure for review
of the finding of neglect, they would still not be entitled to a judicial review of the
administrative law judge’s order. However, Mrs. Schutz’s due-process challenge of
the definition of “neglect” would be reviewable if, in contrast to Carrizales, she
brings that claim in district court once she has exhausted her administrative remedies. 
See Carrizales, 5 S.W.3d at 924.
           In this case, the Schutzes refused to submit to a formal administrative hearing. 
Neither party argues that, in the event the district court did not have jurisdiction, the
Schutzes would not be able to seek an administrative hearing to review the
department’s finding of neglect. Once they have done so, AnnJeanette Schutz


 is
entitled to bring her due-process claims in district court. Because AnnJeanette Schutz
did not exhaust her administrative remedies, we hold the district court did not have
subject-matter jurisdiction over her due-process claim. In all other respects, the trial
court did not have subject-matter jurisdiction regardless of whether the Schutzes’
exhausted their administrative remedies.
          We sustain issue one.
 
 
 
 
 
Conclusion
          We reverse the district court ’s judgment and dismiss the cause. 
 

                                                                        Sherry J. Radack
                                                                        Justice
 
Panel consists of Justices Mirabal, Nuchia, and Radack.
Publish. Tex. R. App. P. 47.4.