**Rosalie DAHL, as Next Friend of Tina DAHL and Todd Dahl, Minor Children, Beneficiaries of the Victoria Koci Malcolm Estate Trust, Rosalie Dahl, Beneficiary of the Victoria Koci Malcolm Estate Trust, and Ted E. Dahl, as Trustee of the Victoria Koci Malcolm Estate Trust, Appellants,**

v.

**The STATE of Texas, Appellee.**

No. 14–02–00279–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 12, 2002.

Timothy A. Hootman, Houston, for appellants.

Gary E. Patterson, Michael E. Denosky, Austin, Thomas Michael Pickford, Houston, for appellee.

Panel consists of Justices YATES, ANDERSON and HUDSON.

## OPINION

JOHN S. ANDERSON, Justice.

Appellee, the State of Texas, initiated eminent domain proceedings for a whole taking of a 1.004 acre tract of land and any improvements on the tract. The land had previously been conveyed to Leonidas Vezos by the Victoria Koci Malcolm Estate Trust, with the Trust retaining the improvements and two purchase-money mortgages. In the eminent domain proceedings, the State joined appellant Ted E. Dahl, Trustee of the Trust, along with Vezos and other parties.

The Trust and appellant Rosalie Dahl ("appellants") counterclaimed against the State, alleging inverse condemnation of their superior right and interest to the money Vezos owed under the promissory notes, which were secured by deeds of trust to the real property the State was condemning.[1] Asserting sovereign immunity, the State moved to dismiss this counterclaim for want of jurisdiction. The trial court granted the State's motion and dismissed appellants' inverse condemnation claim with prejudice.

The principal issue in this interlocutory appeal is the following: when the State, in a statutory eminent domain proceeding, condemns a whole tract of land that secures a purchase-money mortgage note, does the mortgagee (the holder of the note) have a valid inverse condemnation claim for the balance remaining on the note in excess of the condemnation award?[2] We conclude he does not, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 27, 1998, the Trust sold two parcels of land to Vezos, and the same day executed two deeds of trust and security agreements on the respective tracts for the total amount of $611,060. The Trust retained the existing improvements on the property (described by the State as a house and a shed).

On February 8, 2001, the State, by and through its Transportation Commission, filed a petition for statutory condemnation of the property. The Trust, Vezos, and several other entities were parties to the condemnation proceedings and were notified of the Special Commissioners' hearing. Dahl, as Trustee, answered asserting the Trust's ownership of the retained improvements and the lien on the real property. The Trust sought damages for condemnation of the improvements and compensation for the unpaid balance of the mortgage lien.

At the Special Commissioners' hearing on May 23, 2001, the commissioners awarded $400,000 total damages for condemnation of the land and improvements, if any.[3] In early June, 2001, the Trust filed a motion to withdraw funds from the registry of the court. In mid-June, Dahl, as Trustee, filed objections to the award, invoking the right to trial *de novo* by jury in the county civil court at law.

---

1. Appellant Rosalie Dahl sued as beneficiary of the Trust, and as next friend of Tina Dahl and Todd Dahl (minor children and beneficiaries of the Trust).

2. A party may appeal from an interlocutory order of a county court at law that "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001." TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2002).

3. Presumably this award was based on local market value. *See* TEX. PROP.CODE ANN. § 21.042(b) (Vernon Supp.2002) (referring to damages when entire tract or parcel is condemned).

In mid October, 2001, appellants filed their counterclaim against the State and various other parties, alleging the State had taken their purchase-money mortgage security interest by inverse condemnation. Specifically, appellants asserted, "The property taken was [appellants'] superior right and interest to the monies owed by Leonidas Vezos pursuant to a promissory note and secured by a deed of trust regarding the real property in question." Appellants further alleged they were suing "to recover the taking of the balance due and owing on the promissory note." Appellants subsequently amended their counterclaim to allege the State "may not take the property until the lien is paid in full." The State answered with a general denial and a jury demand.

On February 12, 2002, the State filed a motion to dismiss appellants' amended counterclaim for lack of subject matter jurisdiction. The State alleged there could be no inverse condemnation because the State had initiated statutory condemnation proceedings for a whole taking of the tract. The State asserted sovereign immunity and sought dismissal with prejudice. On February 18, appellants filed their response. They referred to the taking of "their note without compensation," but not to the State's taking of improvements on the property. There is nothing in the record to indicate appellants sought to amend their pleadings to include taking of the improvements in the inverse condemnation claim. On February 19, the trial court granted the State's motion and dismissed appellants' counterclaim with prejudice. On March 11, 2002, appellants filed this interlocutory appeal challenging the dismissal.[4]

## DISCUSSION

Appellants present nine issues for review. In issues one through three appellants directly challenge the trial court's order dismissing their counterclaim with prejudice. In issues four through six, they argue the merits of their takings claims under the state constitution. In issues seven through nine, they argue the merits under the federal constitution. Before addressing appellants' issues, we set forth the principles guiding the trial court's action and our review.

### Plea to the Jurisdiction: Standard of Review and Legal Principles

The State's motion to dismiss in this case is the functional equivalent of a plea to the jurisdiction. *See* MICHOL O'CONNOR, ET AL., O'CONNOR'S TEXAS RULES CIVIL TRIALS § 2.1 at 171 (2001). We review a trial court's ruling on a plea to the jurisdiction under a *de novo* standard of review. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998); *University of Houston v. Elthon*, 9 S.W.3d 351, 355 (Tex.App.-Houston [14th Dist.] 1999, pet. dism'd w.o.j.).

A plea to the jurisdiction is a dilatory plea intended to defeat a cause of action without regard to the merits of the asserted claims. *See Bland I.S.D. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). In a plea to the jurisdiction, a defendant contends that, even if all the allegations in a plaintiff's pleadings. are true, there is an incurable jurisdictional defect preventing the court from hearing the case on the merits. *State v. Sledge*, 36 S.W.3d 152, 155 (Tex. App.-Houston [1st Dist.] 2000, pet. denied); *see City of Houston v. Lazell–Mosier*, 5 S.W.3d 887, 889 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Although the underlying claims may form the context in which

4. In August, 2002, the State's statutory eminent domain action proceeded to jury trial on condemnation damages. The jury found the market value of the tract to be $502,941.00.

a party raises a plea to the jurisdiction, the court should decide the plea without delving into the merits of the case. *Bland I.S.D.*, 34 S.W.3d at 554.

▄▄▄ The plaintiff has the burden to plead facts affirmatively showing the trial court has jurisdiction. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). In deciding a plea to the jurisdiction, a court is to construe these factual allegations in favor of the plaintiff and looks to the pleader's intent. *Id.* Accordingly, a trial court must accept the allegations in the petition as true unless the defendant pleads and proves that the plaintiff fraudulently made the allegations to confer jurisdiction. *See Elthon*, 9 S.W.3d at 355–56.

▄▄▄ To determine whether jurisdiction exists, a court need not look solely at the pleadings, but may also consider evidence to prove the jurisdictional issues raised. *Bland I.S.D.*, 34 S.W.3d at 555. Nevertheless, the court should confine itself to the evidence relevant to the jurisdictional issues. *Id.*

▄▄▄ A trial court may grant a plea to the jurisdiction only if the pleading, even after amendment, does not state a cause of action upon which to invoke the trial court's jurisdiction. *See Bybee v. Fireman's Fund Ins. Co.*, 160 Tex. 429, 331 S.W.2d 910, 917 (1960). Thus, if a plaintiff's pleadings are insufficient to demonstrate, but do not affirmatively negate jurisdiction, the proper remedy is to allow the plaintiff an opportunity to amend before dismissing. *City of Austin v. L.S. Ranch, Ltd.*, 970 S.W.2d 750, 753 (Tex. App.-Austin 1998, no pet.) (citing *Texas Ass'n of Business*, 852 S.W.2d at 446; *Peek v. Equipment Serv. Co.*, 779 S.W.2d 802, 805 (Tex.1989)). If, however, a party

pleads facts that affirmatively demonstrate an absence of jurisdiction, such a defect is incurable, and immediate dismissal of the case is proper. *L.S. Ranch*, 970 S.W.2d at 753 (citing *Peek*, 779 S.W.2d at 804; *City of Garland v. Louton*, 691 S.W.2d 603, 605 (Tex.1985)). Similarly, a plaintiff's argument it should be given an opportunity to amend is not persuasive when, as in sovereign immunity cases, the lack of subject-matter jurisdiction can be cured only by the opposing party's consent to be sued. *See Liberty Mut. Ins. Co. v. Sharp*, 874 S.W.2d 736, 739 (Tex.App.-Austin 1994, writ denied) (affirming dismissal with prejudice in governmental immunity case).

### Inverse Condemnation Claims and Sovereign Immunity

▄▄▄ Condemnation is the procedure by which a sovereign state exercises its right to take private property for public use, without consent, but on payment of just compensation. *A.C. Aukerman Co. v. State*, 902 S.W.2d 576, 577 (Tex.App.-Houston [1st Dist.] 1995, writ denied); *State v. Westgate, Ltd.*, 798 S.W.2d 903, 906 (Tex.App.-Austin 1990), *aff'd and remanded*, 843 S.W.2d 448 (Tex.1992); *Hubler v. City of Corpus Christi*, 564 S.W.2d 816, 820 (Tex.Civ.App.-Corpus Christi 1978, writ ref'd n.r.e.). An action for inverse condemnation is the appropriate avenue of relief for a property owner whose property has been taken for public use without due process or without institution of proper condemnation proceedings, and who wishes to recover compensation for that loss. *City of Abilene v. Burk Royalty Co.*, 470 S.W.2d 643, 646 (Tex.1971); *Westgate*, 798 S.W.2d at 906; *Hubler*, 564 S.W.2d at 820. By definition, therefore, a property owner cannot have a valid inverse condemnation claim if the property at issue is the subject of a properly brought

condemnation or eminent domain action.[5]

The State does not have sovereign immunity from a *valid* inverse condemnation claim. *See Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex.1980) (holding governmental immunity did not shield city from claim under article I, section 17 of the Texas Constitution); *State v. Biggar*, 848 S.W.2d 291, 294–95 (Tex.App.-Austin 1993) (same), *aff'd*, 873 S.W.2d 11 (Tex.1994). When, however, a plaintiff does not allege a valid inverse condemnation claim, sovereign immunity does apply, and a court should grant the plea to the jurisdiction. *See e.g., TRST Corpus, Inc. v. Fin. Ctr.*, 9 S.W.3d 316, 323 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (holding sovereign immunity barred "taking" cause of action when plaintiff failed to allege State intentionally performed acts resulting in taking; reversing trial court's order denying plea to jurisdiction); *Green Int'l, Inc., v. State*, 877 S.W.2d 428, 435–36 (Tex.App.-Austin 1994, writ dism'd) (upholding grant of plea to the jurisdiction when facts alleged by plaintiff showed State had no intent to take property in question for use under its power of eminent domain).

In summary, if appellants' pleadings demonstrate their "inverse condemnation" claim covers either the identical property the State seeks to condemn in eminent domain proceedings or an interest not recognized as separate from that property for condemnation purposes, appellants have no valid inverse condemnation claim. Under such circumstances, sovereign immunity bars appellants' suit, and dismissal with prejudice is appropriate. With these principles in mind, we turn to appellants' issues.

### Appellants' Issues One through Three

**Issue one: whether the trial court erred in dismissing appellants' counterclaim with prejudice.** In issue one, appellants contend the trial court erred in dismissing their counterclaim with prejudice. Appellants, however, distinguish between pleas to the jurisdiction based on sovereign immunity and other pleas to the jurisdiction. They observe dismissal with prejudice *is* appropriate when the plea to the jurisdiction is based on sovereign immunity. In this context, appellants cite *Liberty Mutual*, in which the court upheld a dismissal with prejudice based on sovereign immunity because, in that case, there was nothing the plaintiff could have included in its petition that would have conferred jurisdiction. *See* 874 S.W.2d at 739. As discussed in issues two and three below, there is nothing appellants could have added to their petition that would have conferred jurisdiction; instead, their petition affirmatively showed lack of jurisdiction.

We overrule issue one.

**Issue two: whether the trial court erred in not allowing them time to amend their petition.** In issue two, appellants contend they should have been permitted to amend the petition to allege taking of the improvements. Appellants point to no other amendment that would have conferred jurisdiction, and there is nothing in the record to indicate appellants ever sought leave to amend their petition.[6]

---

**5.** "The process of exercising the power of eminent domain is commonly referred to as 'condemnation' or 'expropriation.'" BLACK'S LAW DICTIONARY 523 (6th ed.1990).

**6.** Appellants responded to the motion to dismiss, but did not raise the issue of the improvements in their response. Neither did they seek leave to amend. Arguably, they have waived the claim the trial court erred in not allowing them time to amend. *See Kassen v. Hatley*, 887 S.W.2d 4, 13–14 n. 10 (Tex.1994) (stating defendant should have pursued sovereign immunity attack by special

The improvements, "if any," were included in the State's petition for condemnation, and the Trustee was named as a party to the condemnation action.[7] An action for inverse condemnation of the improvements would have been duplicative of the State's condemnation action and therefore would not comprise a valid inverse condemnation. Adding the improvements would not have conferred jurisdiction.

We overrule appellants' issue two.

 *Issue three: whether the trial court erred in concluding it did not have subject matter jurisdiction over appellants "inverse condemnation" claims and therefore erred in granting the motion to dismiss.* Texas Government Code section 25.1032(c) provides in relevant part: "A county civil court at law has exclusive jurisdiction in Harris County of eminent domain proceedings, both statutory and inverse, regardless of the amount in controversy." Tex. Gov't Code Ann. § 25.1032(c) (Vernon Supp.2002).[8] In issue three, appellants contend, because the county civil court at law has exclusive jurisdiction over "inverse" eminent domain proceedings, *ipso facto*, the count civil court at law had jurisdiction over their action. This argument assumes appellants had a valid inverse condemnation claim that was not duplicative of the State's whole taking of the tract.

Here, then, we reach the principal issue in this appeal. To analyze issue three, we turn to the nature of appellants' condemnation action in relation to (1) the State's condemnation action, (2) the nature of the remaining property interest appellants were asserting, and (3) state and federal takings law.

In its condemnation action, the State was seeking a whole taking of a tract of land subject to liens held by the Trust securing two purchase-money mortgages. In the context of a whole taking, the total value of the property cannot be more than the market value of the property as if it were owned by only one entity. *See* Tex. Prop.Code Ann. § 21.042(b) (Vernon Supp. 2002) (providing, if entire tract or parcel of real property is condemned, damage to property owner is local market value of property at time of special commissioners' hearing); *Urban Renewal Agency v. Trammel,* 407 S.W.2d 773, 774 (Tex.1966) (stating, when property sought to be acquired in condemnation proceeding is subject to a lease, fact-finder first determines market value of the entire property as if it belonged to one person; fact-finder then apportions market value between fee owner and other parties having interest in the property); *Zinsmeyer v. State,* 646 S.W.2d 626, 628 (Tex.App.-San Antonio 1983, no

exception rather than by motion for summary judgment, but because the plaintiffs did not present an objection to trial court or request opportunity to amend petition in wake of summary judgment, they waived complaint); *Higbie Roth Constr. Co. v. Houston Shell & Concrete,* 1 S.W.3d 808, 811 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (citing *Kassen* and holding appellant, by not requesting opportunity to amend pleadings, waived reliance on complaint premised on absence of special exceptions).

7. Appellants, as individuals and beneficiaries of the Trust, do not contend their interests differed from those of the Trustee. By the terms of the Trust, the Trustee had the power to commence or defend any litigation with respect to the Trust or Trust property. It was therefore not necessary for the State to name the individual beneficiaries. *See Citizens State Bank of Dickinson v. Bowles,* 663 S.W.2d 845, 848 (Tex.App.-Houston [14th Dist.] 1983, writ dism'd).

8. Exclusive jurisdiction is the power a court exercises over an action or person to the exclusion of all other courts. *See* Black's Law Dictionary 564 (6th ed.1990).

writ) (applying same rule to easement ownership).

■ Simply stated, a note secured by a mortgage on a condemned tract of land is not awarded a value in the threshold determination of "market value." As explained in *Nichols on Eminent Domain:*

> The duty of the public to make payment for the property which it has taken is not affected by the nature of the title or by the diversity of interests in the property. The public pays what the land is worth, and the amount so paid is to be divided among the various claimants, according to the nature of their respective estates.

4 Julius L. Sackman, Nichols on Eminent Domain, § 14A.04(1) (rev. 3d ed. 1989).

Appellants, however, seek to recover the full amount of the outstanding debt in the event the award is less than the outstanding debt. Under appellants' approach, the State, in the context of a taking, would become the insurer of all purchase-money mortgages, regardless of whether the mortgage bears a reasonable relationship to the market value of the property. Appellants cite no authority under the takings clause of either the state or the federal constitution that warrants such a proposition.[9]

To argue that the State should be liable for the amount by which the note exceeds the condemnation award (i.e., the market value as found by the jury), appellants cite *Williams v. State*, 177 S.W.2d 106 (Tex. Civ.App.-Waco 1943, writ ref'd). *Williams*, however, does not support appellants' argument. *Williams* is distinguishable, and the language on which appellants rely is *dictum.*

In 1924, Williams' son sold a tract of land to two other persons, taking back cash and five notes, one of which was for $10,000. *Id.* at 107. The purchasers were to subdivide the property into blocks and lots for sale to the public. During the latter part of 1925, the State began constructing a highway across a corner of one of the blocks. *Id.*

In September 1925, the son died testate, naming his wife and mother as the only devisees. Under the terms of an agreement settling the estate, Williams received the unpaid $10,000 note. *Id.* On January 5, 1935, the then owners of the remaining portions of the tract conveyed a part of the property to Williams for $10.00 consideration and "cancellation of the original executory contract." *Id.* at 107–08.

In 1937, Williams received legislative authority to sue the State. *Id.* at 107. The case was tried to a jury, which found the value of the strip taken for highway purposes was $500 at the time it was taken, the damage to the remainder was $500, and the amount due Williams on her note was $179.16 in excess of the market value of the land conveyed to her. *Id.* at 108. Williams moved for judgment in her favor for $1000, but the trial court overruled her motion and rendered judgment Williams take nothing. *Id.*

The court of appeals affirmed, stating:

> While plaintiff [Williams] became the equitable holder and owner of the

---

9. The Texas Constitution provides in relevant part: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money." Tex. Const. art. I, § 17. The United States Consti-

tution provides in relevant part: "[N]or shall private property be taken for public use without just compensation." U.S. Const. amend. V. The Takings Clause of the Fifth Amendment is applicable to the States through the Fourteenth Amendment. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 121 S.Ct. 2448, 2457, 150 L.Ed.2d 592 (2001).

$10,000 note under the settlement agreement and order of the Probate Court of Harris County approving same, we do not think, under the undisputed evidence in this case, her ownership of the note, without an assignment or transfer in writing of the superior title, gave her such interest in the land as to enable her to rescind the original deed of conveyance from Rush Williams to Laswell and Harbin and thereby recover the legal title to the land therein conveyed. Her remedy for default in the payment of her note was restricted, under the circumstances, to a suit upon the note with a judicial foreclosure of the lien securing payment thereof. Having renewed and extended the indebtedness and lien on December 29, 1931, and having accepted the deed dated January 5, 1935, in cancellation of the indebtedness evidenced by her note with knowledge as to the location and maintenance of Highway No. 6, we are of the opinion that plaintiff was not thereafter entitled to assert any cause of action against defendants [the State and the Highway Commission] for the damages herein sought because her claim for such damages, if any she ever had, was satisfied and discharged by the acquisition of the land thus conveyed to her, regardless of the value of the land conveyed or the amount of the debt thereby extinguished. In any event, the maximum amount of plaintiff's recovery, under the findings of the jury, would have been the sum of $179.16. She did not ask judgment in her favor for that amount.

*Id.* at 109 (citations omitted).[10]

The State had granted Williams the right to sue, but she ultimately received nothing; that is, she was not awarded for her note any amount in excess of the market value of the land. The statement in *Williams* on which appellants rely (that plaintiff's recovery would have been $179.16, an amount exceeding market value) is *dictum*. *Williams* does not support the contention that a holder of a note, secured by a lien on a condemned tract, may recover an amount in addition to the amount ultimately awarded for taking of the whole tract of land.

We overrule appellants' issue three.

### Appellants' Issues Four through Nine

We have reviewed appellants' issues four through nine in the context of reviewing the trial court's ruling on appellants' plea to the jurisdiction and conclude, in those issues, appellants have not set forth any rationale on which they could sustain an inverse condemnation claim under the facts of this case. Accordingly, in this context, we overrule appellants' issues four through nine.

### CONCLUSION

Appellants have offered no suggestion of how they might amend their claim to avoid sovereign immunity. We affirm the order of the trial court dismissing appellants' amended counterclaim with prejudice.

---

10. The *Williams* court cited two cases in support of its conclusion Williams' maximum recovery would be $179.16: *Carroll v. Edmondson*, 41 S.W.2d 64 (Tex. Comm'n App. 1931, judgm't adopted), and *American National Insurance Co. v. City of Port Arthur*, 62 S.W.2d 256 (Tex.Civ.App.-Beaumont 1933, no writ). Only the latter was a condemnation case. It involved taking of an easement and the appellate court held there was no damage to the security.