Reversed and Remanded and Opinion filed February 5, 2008








Reversed
and Remanded and Opinion filed February 5, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00547-CV

_______________

 

CHARLES LYNN BROWNLOW AND MARLENE H. BROWNLOW,
Appellants

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 149th District Court

Brazoria County, Texas

Trial Court Cause No. 41, 086

                                                                                                                                               


 

O P I N I O N

Appellants Charles Lynn Brownlow and
Marlene H. Brownlow (ABrownlows@) appeal from the trial court=s granting of the State=s plea to the jurisdiction on June
26, 2007.  They contend that the State has waived sovereign immunity in their
inverse condemnation claim.  The State responds that because the soil was
properly disposed of in a previous condemnation proceeding, this rendered the
Brownlows= inverse condemnation claim defective and it is barred by sovereign
immunity.  We reverse and remand.

 

 








I. Factual and Procedural Background

On April 14, 2000, the State filed a
Petition for Condemnation in the County Court at Law No. 3 of Brazoria County,
Texas, to acquire an interest in 12.146 acres of land, owned by the Brownlows,
for the opening, construction and maintenance of a detention facility (a pond
that would retain water) as part of the State=s Highway 35 widening project.  The
pond was to have a fill volume of 84,747 cubic meters, requiring 87,544 dirt to
be displaced.  The Petition for Condemnation initially proceeded as a
condemnation for the fee estate in the 12.146 acres.  The parties subsequently
signed an Agreed Judgment granting  the State  Aa permanent easement in the property
. . . for the purpose of opening, constructing, and maintaining a
detention/mitigation facility in, over, and across the tract of land for the
purpose of making additions to, improvements on, and repairs to said detention
facility or an part thereof . . .@ and granted the Brownlows A[$55,000.00] for the interests in the
properties herein condemned; and for damages, if any, to Condemnees= remaining lands.@ 

The State then began to remove 87,544
cubic meters of dirt and use it in another section of the Highway 35 widening
project. The Brownlows protested that the excavated soil was not part of the
permanent easement condemnation.  They contend that as the fee simple owners of
the 12.146 acres the soil belongs to them; hence the State=s appropriation of the soil requires
an additional condemnation with separate compensation.

 II.  Law and Standard of Review

A. Plea to the Jurisdiction








Subject-matter jurisdiction is
essential to a court=s authority to act.  Con=t Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 448 n.2 (Tex.
1996).  Hence,
the plaintiff has the burden to plead facts affirmatively demonstrating the
trial court has jurisdiction.  State v. Holland, 221 S.W.3d 639,642
(Tex. 2007). Upon a
finding that the court lacks subject matter jurisdiction, the court must
dismiss the suit.  Jansen v. Fitzpatrick, 14 S.W.3d 436, 431 (Tex. App.CHouston [14th Dist.] 2000, no pet.). 
A plea to the jurisdiction
raises a question of law that we review de novo. Holland, 221
S.W.3d at 642; C.L. Westbrook, Jr. v. Penley, 231 S.W.3d 389, 394
(Tex. 2007); Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.
2000).  A plea to the jurisdiction is a dilatory plea intended to defeat a
cause of action without regard to the merits of the asserted claims. See
Bland Indep. Sch. Dist, 34 S.W.3d at 554. 

A plea to the jurisdiction, based on
defendant=s
sovereign immunity, challenges a trial court's jurisdiction without regard for
the merits of the claims.  Holland, 221 S.W.3d 639; Bland Indep. Sch.
Dist., 34 S.W.3d at 554; Dahl ex rel. Dahl v. State, 92 S.W.3d 856,
860 (Tex. App.CHouston [14th Dist.] 2002, no pet.).  If the relevant
undisputed evidence negates jurisdiction, a plea to the jurisdiction must be
granted.  Tex. Dept. of Parks and Wildlife v. Miranda, 133 S.W.3d 217,
225-26 (Tex. 2004).  In some instances, however, a plea
to the jurisdiction may require the court to consider
evidence pertaining to jurisdictional facts that go beyond the pleadings. 
Holland, 221 S.W.3d at 643; see also Bland Indep. Sch. Dist., 34
S.W.3d at 555. But the court should confine itself to the evidence relevant to
those jurisdictional issues.  Tex. Natural Res. Conservation Comm=n v. White, 46 S.W.3d 864, 868 (Tex. 2001); Bland
Indep. Sch. Dist., 34 S.W.3d at 555; Dahl ex rel. Dahl, 92 S.W.3d at
860.   A plea should not be granted if there
is a fact issue as to the court's jurisdiction. Holland, 221 S.W.3d at
643.

B.  Sovereign Immunity and Inverse Condemnation Claims 

 Absent an express waiver of sovereign immunity, the
State is presumed immune from suit.  Holland, 221 S.W.3d at 643; State
v. Shumake, 199 S.W.3d 279, 283 (Tex. 2006); Fed Sign v. Tex. S. Univ.,
951 S.W.2d 401, 405 (Tex. 1997).  Sovereign immunity includes two distinct
principles, immunity from suit and immunity from liability.  Tex. Dept. Of
Parks and Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004).  While immunity from
liability is an affirmative defense, immunity from suit deprives a court of
subject-matter jurisdiction. Id.
 








Sovereign immunity , however, is waived pursuant to the
takings clause of Article I, section 17 of the Texas Constitution.  See
Holland, 221 S.W.3d at 643; Gen. Servs. Comm=n v. Little-Tex Insulation Co., 39 S.W.3d 591, 598 (Tex. 2001); Dahl, 92 S.W.3d at 862.  The takings clause provides: ANo person=s
property shall be taken, damaged, or destroyed for or applied to public use without
adequate compensation being made, unless by the consent of such person.@  Tex. Const. Art. I, ' 17.  To establish a takings claim under Article I,
section 17, the claimant must show that a governmental actor acted: (1)
intentionally; (2) took or damaged property; and (3) did so for a public use.  Holland,
221 S.W.3d at 643; Gen. Servs. Comm=n, 39
S.W.3d at 598. 
A condemnation is the procedure
by which the State compels the transfer of property, from a private owner, for
public use, and compensates that owner.  A.C. Aukerman Co. v. State, 902
S.W.2d 576, (Tex. App.CHouston
[1st Dist.] 1995, writ denied).   Inverse condemnation, by contrast, occurs
when the owner of the property, alleging the State took the property without
proper process or proceedings, seeks compensation.  City of Abilene v. Burk
Royalty Co., 470 S.W.2d 643, 646 (Tex. 1971).   In order for there to be a
taking, the plaintiff must have a compensable interest in the property at
issue.  Fort Worth Concrete Co. v. State, 416 S.W.2d 518, 521-523 (Tex.
App.CFort Worth 1967, writ ref=d n.r.e.).  Whether the particular facts are sufficient
to constitute a taking is a question of law for the court.  Gen. Servs. Comm=n, 39
S.W.3d at 598. 

A property owner cannot have a valid inverse condemnation
claim if the property at issue was the subject of a previous, proper
condemnation or sovereign domain action.  Dahl, 92 S.W.3d at 861. If the appellant=s pleadings demonstrate that his inverse condemnation
claim covers either the identical property lawfully condemned by the State, or
an interest not recognized as separate from that property, he has no valid inverse condemnation claim, and
sovereign immunity bars the suit.  See Dahl ex rel. Dahl, 92 S.W.3d at 861. When the inverse conversion claim is defective, the
State prevails on a claim of sovereign immunity. See Tex. Dep=t of Transp. v. City of Sunset Valley, 146 S.W.3d 637, 645-46 (Tex. 2004); Gen. Servs. Comm=n, 39
S.W.3d at 598; Dahl, 92 S.W.3d at 862.








C.  Fee Estate and Easement

A fee simple absolute title to land gives the owner the
right to use the land in any way not hurtful to others.  Calcasieu Lumber
Co. v. Harris, 13 S.W. 453, 454 (1890); Southtex 66 Pipeline Co., Ltd.
v. Spoor, 238 S.W.3d 538, 547 (Tex. App.CHouston [14th Dist.], 2007, no pet.).  By contrast, an
easement is a nonpossessory interest, though it authorizes its holder to
use the property for a particular purpose.  Marcus Cable Associates, L.P. v.
Krohn, 90 S.W.3d 697, 700 (Tex. 2002). While establishment of an easement,
in general terms, implies a grant of unlimited reasonable use as is reasonably
necessary and convenient, Coleman v. Forister, 514 S.W.2d 899, 903 (Tex.
1974), the fee owner retains title to the land and all that is ordinarily
considered part of that land.  Brunson v, State, 418 S.W.2d 504, 506
(Tex. 1967).  

In interpreting and evaluating an express easement, we
apply the basic principles of contract construction.  Marcus Cable
Associates, L.P., 90 S.W.3d at 700.   AWhen the grant=s
terms are not specifically defined, they should be given their plain ,
ordinary, and generally accepted meaning.  Id. at 701.  When an easement
is given, nothing passes by implication, and it is unnecessary for the grantor
to make any reservation in the grant to protect his interests in the land, for Awhat he does not covey, he still retains.@ Id. at 701 (quoting City of Pasadena v.
California-Michigan Land & Water Co., 17 Cal.2d 576, 579, 110 P.2d 983
(1941)). 

III. Analysis of Brownlows= Appeal








On April 14, 2000, the State sought a condemnation in fee
simple for the 12.146 acres of land owned by the Brownlows.  On December 13,
2002 the parties entered an agreement by which the State obtained a permanent
easement on the property Afor
the purpose of opening, constructing, and maintaining a detention facility in,
over, and across such tract of land . . . with the rights at all times of
ingress, egress, and regress in over on and across, such tract of land for the
purposes of making additions to, improvements on, and repairs to said detention
facility or an part thereof . . ..@ 
The Brownlow=s received $55,000.00 in
payment thereof.  This easement was to create a detention facility to capture
rainwater displaced by the widening of Highway 35, which required displacement
of 87,544 cubic meters of dirt. The Agreed Judgment was the result of
negotiation between the parties, and the payment was for an easement alone.[1] 

The Brownlows contend
that they were unaware, and had not agreed, that soil would be removed from
their property in order to create the detention facility.  They contend that
because no fee interest was transferred to the State at any time the State had no
right to take the soil and use it for another purpose without additional
compensation.  They argue that while the State obtained the right to build and
maintain a detention facility, it did not acquire the right to take soil from
their land.  As they point out, the Agreed Judgment says nothing about
transferring ownership to the State of any soil or granting the State any right
to carry away displaced soil.  In the absence of any ambiguity, the contract is
clear on this point.  See Marcus Cable Associates, L.P., 90 S.W.3d at
700-01.[2]








            The State
responds that when it possess an easement over and upon property to build and
maintain a detention facility, it has, by implication, the right to remove the
soil necessary to that purpose and the right to use that soil elsewhere without
the permission of, or compensation to, the fee owner of the estate, citing to  City
of LaGrange v. Brown, 161 S.W. 8 (Tex. App. Austin 1913, writ ref=d). 
The State=s reliance upon City of LaGrange, however,
is misplaced.  Insofar as the City of LaGrange is distinguishable,
applying to those cases in which the State comes into incidental possession of
soil while grading a highway, it may remain good law.[3] 
But to the extent that our opinion here contradicts this 1913, intermediate
appellate case from Austin, we disagree with its holding.  In this case the
State actively negotiated and procured an easement for the single purpose of
building a water detention facility, but then proceeded to remove thousands of
cubic meters of soil from that location for a purpose unrelated to the
construction of the detention facility.  While it may be Areasonably
necessary@ for the state to displace the soil to dig the
detention facility, the state provided no testimony or other evidence that it
was reasonably necessary for it to cart off an enormous amount of soil to
another location not owned by the Brownlows and use it for its own purposes.  Coleman
v. Forister, 514 S.W.2d 899, 903 (Tex. 1974) (an easement holder has the
right to do what is reasonably necessary to carry out the intent of the
easement)(emphasis added).  This court takes judicial note that in the
marketplace today soil is a valuable commodity.[4] 
Having bargained only for an easement, the State is not entitled to ownership
of the extracted soil.   The Brownlows correctly contend that the State paid
only for an easement to build a detention facility, and we find that this is
exactly what it purchased.  To grant it more, by implication, would be contrary
to the express terms of the Agreed Judgment.  A party to a contract has a right
to rely on the language of the contract, and in the case of a grant of
easement, the right to trust that nothing passes by implication.  Marcus
Cable Associates, L.P., 90 S.W.3d at 700-01.

IV.  Conclusion








Because the soil removed
for the purpose of constructing the detention facility was neither subject to
the initial condemnation proceedings nor included within the Agreed Judgment,
it remains the property of the fee owner.  The Brownlows have sufficiently
demonstrated that they have suffered damage to, or loss of, property and hence
have a valid inverse condemnation claim.  The State had a permanent easement Afor
the purpose of opening, constructing, and maintaining a detention/mitigation
facility in, over, and across the tract of land for the purpose of
making additions to, improvements on, and repairs to said detention
facility or an part thereof . . .@ (emphasis added).   It
had a license to use the Brownlow=s property only for the
purpose stated, not a license to take a valuable commodity and appropriate it
to its own uses elsewhere.  As such, the State=s sovereign immunity is
waived. 

Accordingly, the judgment
of the trial court is reversed and this case is remanded to the trial court for
a trial on the merits.

 

 

/s/        Frank
C. Price

Senior Justice

 

 

Judgment rendered and
Opinion filed February 5, 2008.

Panel consists of Chief
Justice Hedges, Justice Anderson, and Senior Justice Price.*









[1]           The Agreed Judgment was accompanied by a
construction plan sheet, initialed by Brownlow=s attorney, showing the cut volume required to create the 87,544 cubic
meter retention pond.





[2]           We find no ambiguity in this contract, but
had we found an ambiguity, because the State provided the map (exhibit A,
attached to the contract and incorporated by reference) upon which it relies
for the contention that the removal of 87, 544 was implicit (impliedly from
the premises), the ambiguity would be construed against it.





[3]           It should also be noted that the permanent
easement discussed in LaGrange was not subject to an explicit contract,
the Agreed Judgment, as in the case before us.





[4]           The State, no novice to construction
projects, knows the value of dirt.  It is also quite likely, though this case
has not progressed to the point of determining the value of the dirt removed,
that it exceeds the $55,000.00 paid the Brownlows for the permanent easement.





*           Senior Justice Frank C. Price sitting by
assignment.