OPINION

 

No. 04-09-00403-CV

 

The City of San Antonio,

Appellant/Cross-Appellee

 

v.

 

Kopplow Development, Inc.,

Appellee/Cross-Appellant

 

From the 131st
Judicial District Court, Bexar County, Texas

Trial Court No. 2004-CI-08167

Honorable John D.
Gabriel, Jr., Judge Presiding

 

Opinion by:   Phylis J. Speedlin, Justice

 

Sitting:                     Karen Angelini, Justice

                     Phylis
J. Speedlin, Justice

                     Rebecca
Simmons, Justice

 

Delivered and
Filed:  November 3, 2010

 

AFFIRMED IN
PART; REVERSED AND RENDERED IN PART

 

In this statutory
condemnation case, the City of San Antonio appeals a judgment rendered in favor
of Kopplow Development, Inc., arguing the evidence is legally insufficient to
support the jury’s verdict awarding Kopplow remainder damages.  Kopplow has
also filed a cross-appeal in which it contends the trial court erred in
excluding certain evidence.  We affirm the trial court’s judgment in part, and
reverse the judgment in part and render judgment that Kopplow take nothing on
its claim for remainder damages.  

Background

Kopplow Development owns
approximately 18.451 acres of land at the southeast corner of the intersection
of Culebra Road and NW Loop 410 in San Antonio.  At or around the time Kopplow
purchased the property, Kopplow also obtained a 16-foot wide non-exclusive
utility easement and a 25-foot wide temporary construction easement from
Southwest Research Institute, primarily to obtain gravity sewer service to its
property.  

As part of a public works
project, the City of San Antonio planned and constructed the Regional Storm
Water Detention Facility (the “Detention Facility” or “Detention Project”) for
the Leon Creek watershed located south of Kopplow’s property.  On January 16,
2004, the City obtained a 207.513-acre drainage easement from Southwest
Research Institute to construct the Detention Facility.  Kopplow’s 16-foot wide
non-exclusive utility easement and the City’s drainage easement overlap.  As
part of the Detention Facility, the City constructed a concrete “inflow wall”
across a portion of Southwest Research Institute’s property where the two
parties’ easements overlap.  In a ten-year storm, the inflow wall protects
Kopplow’s property from flooding.  The inflow wall is 735 feet high.  The
lowest top bank elevation on Kopplow’s property is 741 feet.  The City
constructed a 24-inch sleeve in the inflow wall to allow for extension of a
future sewer line on Kopplow’s property.  

Aside from the inflow
wall, the Detention Project also consists of two other components: a spillway
and a large berm, or dam, located to the south of Kopplow’s property.  The berm
is located approximately 1700 feet south of Kopplow’s property, and is 748 feet
at its maximum height.  The City concedes that this berm may make Kopplow’s
property, a quarter of which is located in the 100-year floodplain, susceptible
to flooding in the future.  The following diagram illustrates the locations of
the various components of the Detention Facility and Kopplow’s property.




 
 
 
 
 
 
 Inflow Wall
 
 
 
 
  
 





 
 
 
 
 
 
 Kopplow Property
 
 
 
 
  
 





 
 
 
 
 
 
 Berm
 
 
 
 
  
 





 
 
 
 
 
 
 Spillway
 
 
 
 
  
 


 

 

On May 27, 2004, Kopplow
filed an inverse condemnation suit against the City alleging that the entire Detention
Facility would subject Kopplow’s property to flooding in the event of a
100-year flood, and sought an injunction against the building of the inflow
wall on Kopplow’s non-exclusive easement.  On June 25, 2004, the City filed its
answer and counterclaim for statutory condemnation.  The counterclaim for
statutory condemnation solely concerns the construction of the inflow wall upon
the 16-foot non-exclusive easement.  

The case proceeded to a
jury trial in March 2009.  At trial, testimony was presented regarding the
impact of the inflow wall on Kopplow’s property.  Robert Browning, the City’s
chief storm water engineer, testified that the purpose of the Detention Project
was to detain storm water and reduce flooding downstream.  He stated that the
project consists of three independent components: the inflow wall; the
emergency overflow spillway; and the protection berm.  When asked whether the
inflow wall causes Kopplow’s property to flood in a 100-year flood, Browning
answered, “No, the inflow wall does not impact the floodplain line on his
property.”  Browning added that although the project as a whole causes the
level of the 100-year floodplain to be two feet higher on Kopplow’s property,
the inflow wall does not have anything to do with the potential flooding.  He
stated that the wall merely controls when the water enters the basin during a
100-year event.  Browning stated that removing the inflow wall would have an
impact on the downstream property, but not on Kopplow’s property.  Browning
testified that it is the large berm that causes water to go on Kopplow’s property
during a 100-year flood, not the inflow wall.

Dennis Rion, a civil
engineer whose firm assisted Kopplow in developing the land, testified that the
purpose of the City’s Detention Facility is to reduce the water surface
elevation and potential flooding downstream.  He stated that the effect of the Detention
Project on Kopplow’s property is an increase of 2.16 feet in elevation in a
100-year flood event.  Rion stated there is “no doubt” that the increase of a
100-year storm on Kopplow’s property is caused by the City’s Detention Facility. 
On rebuttal, Rion was specifically asked what would happen if the City had not
built the inflow wall.  He answered, “[I]n a hundred year storm . . . it’s
intuitive to me that the water surface elevation on [Kopplow’s] property
wouldn’t change much if that inflow wall was there or not, but it is a critical
part of the detention pond.”  

Lynn Eckmann, a real
estate appraiser, testified that the value of the easement taken by the City
(on which the inflow wall was built) was $4,600.  She also stated that the
inflow wall did not damage the remainder of Kopplow’s fee property.  Eckmann
elaborated that the 24-inch sleeve constructed in the inflow wall allowed
Kopplow to extend its sewer line and develop its 18 acres.  Eckmann stated that
the storm water facility as a whole increased the ultimate development
floodplain on Kopplow’s property by 2.16 feet.  She opined that if Kopplow
hypothetically had to fill the remainder property with two feet of fill,
damages in the amount of $408,400 would be warranted.  She assigned zero
damages to Kopplow’s remainder property based on the City’s taking of the
easement.  Kopplow’s appraiser, David Bolton, testified that the difference in
value between the whole property before taking and the remainder after taking
was $815,000.  

The charge asked the jury
three questions:

1.  On June 25, 2004, what was the
fair market value of the part taken?

 

2. Does the City’s use of the part
taken proximately cause damages to the remainder?

 

3.  On June 25, 2004, what was the
difference between the fair market value of the remainder before the taking and
the fair market value of the remainder after the taking?

 

During deliberations, the jury sent the following
note to the trial court:

Do we have to consider the
inflow wall only (inflow wall/part taken) when answering #2; or do we consider
the SW Regional Detention Facility as a whole?  Or is this a question we
(as the jury) have to answer.

 

The court instructed the jury to consider the
evidence and instructions and to continue deliberating.  The jury found that as
of the date of the taking, the value of the part taken (i.e., the inflow
wall built across Kopplow’s easement) was $4,600, that the use of the part
taken was a proximate cause of damages to the remainder, and that the remainder
had been damaged in the amount of $690,000.  The trial court rendered judgment
on the jury’s verdict.  The City moved for a new trial and for judgment notwithstanding
the verdict (JNOV); the trial court denied the motion for JNOV, and the motion
for new trial was overruled by operation of law.  Both parties appealed.  

Discussion

The City brings four
issues on appeal: (1) there is no evidence, or the evidence is factually
insufficient, to support the jury’s affirmative answer to Question No. 2
because the evidence is undisputed that the City’s use of Kopplow’s easement
causes no damages to Kopplow’s remainder; (2) because the evidence is
undisputed that the City’s use of Kopplow’s easement causes no damages to
Kopplow’s remainder, the jury’s answer to Question No. 3 can only be zero; (3) notwithstanding
the first two issues, the Campbell[1] rule precludes remainder
damages in the statutory condemnation case of Kopplow’s easement; and (4) any
claim for damages based on a claim of inverse condemnation is premature.  We
first address whether the evidence at trial was sufficient to support the
jury’s affirmative answer to Question No. 2.  

Standard of
Review: Legal and Factual Sufficiency

“The final test for legal
sufficiency must always be whether the evidence at trial would enable
reasonable and fair-minded people to reach the verdict under review.”  City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  In reviewing a legal
sufficiency challenge, we view the evidence in the light favorable to the
verdict, crediting favorable evidence if reasonable jurors could, and
disregarding contrary evidence unless reasonable jurors could not.  Id.
at 807.  Evidence is legally insufficient when the record discloses: (1) a
complete absence of evidence of a vital fact; (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (4) the evidence establishes conclusively the opposite of a
vital fact.  Id. at 810.  In a factual sufficiency review, we consider
all the evidence supporting and contradicting the jury’s finding.  Plas-Tex,
Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).  We set aside
the jury’s verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust.  Cain v. Bain, 709 S.W.2d
175, 176 (Tex. 1986).  

Damages to Kopplow’s Remainder

The Texas Constitution
provides: “No person’s property shall be taken, damaged or destroyed for or
applied to public use without adequate compensation being made. . . .”  Tex Const. art. I, § 17.  When an entire tract of
property is condemned, the landowner is entitled to payment of the local market
value of the property.  Tex. Prop. Code
Ann. § 21.042(b) (West Supp. 2010).  When only a part of a person’s
property is taken, however, the constitution requires adequate compensation
both for the part taken and “severance damages” to the remainder.  State v.
Schmidt, 867 S.W.2d 769, 772 (Tex. 1993).  Accordingly, section 21.042(c)
of the Property Code provides:

If a portion of a tract or parcel of real
property is condemned, the special commissioners shall determine the damage to
the property owner after estimating the extent of the injury and benefit to the
property owner, including the effect of the condemnation on the value of the
property owner’s remaining property.

  

Tex. Prop.
Code Ann. § 21.042(c) (West Supp. 2010).  

Severance damages are
determined by “ascertaining the difference between the market value of the
remainder of the tract immediately before the taking and the market value of
the remainder of the tract immediately after the appropriation, taking into
consideration the nature of the improvement, and the use to which the land
taken is to be put.”  Schmidt, 867 S.W.2d at 772 (quoting State v.
Carpenter, 126 Tex. 604, 89 S.W.2d 194, 197 (1936)).  Severance damages are
not recoverable, however, where “the diminution in value of the remainder [is]
caused by the acquisition and use of adjoining lands of others for the same
undertaking.”  Schmidt, 867 S.W.2d at 778 (quoting Campbell v. United
States, 266 U.S. 368, 372 (1924)).  The Schmidt court held that the
“Campbell rule” should control unless the condemnee can show:  

(1)  the land
taken from the condemnee landowner was indispensable to the . . . project;

(2)  the land
taken constituted a substantial (not inconsequential) part of the tract devoted
to the project; and 

(3)  the damages
resulting to the land not taken from the use of the land taken were inseparable
from those to the same land flowing from the condemnor government’s use of its
adjoining land in the . . . project. 

 

Schmidt, 867 S.W.2d at 778 (quoting United
States v. 15.65 Acres of Land, 689 F.2d 1329, 1332 (9th Cir. 1982)).

In Schmidt, the
State took a strip of frontage property from the landowners as part of a
project to modify Highway 183 into a controlled access highway.  Id. at
770-71.  The project called for Highway 183 to be elevated, thereby reducing
the visibility and convenience of access to the landowners’ property.  Id.
at 771.  The property owners claimed additional compensation for decreased
market value of the remainder tract due to impaired visibility and
accessibility.  Id. at 772.  The court denied recovery of severance
damages, stating that the claimed diminution of value was due entirely to the
State’s modifications to Highway 183 and not to the use of the strip taken from
the landowners.  Id. at 778.  The court further emphasized that although
the parts taken were indispensible to the entire project, they did not
constitute a substantial part of the property devoted to the project, and the
damages resulting to the remaining tracts were not inseparable from those
caused by the taking.  Id. at 779.  Therefore, the Campbell rule
prevented the landowners from recovering severance damages.  Id. at
778-79.  

Here, the City maintains
that the undisputed evidence refutes Kopplow’s claim that the easement taken
will cause the Kopplow property to flood an additional two feet in the event of
a hypothetical 100-year flood.  In support of its argument, the City relies on
the testimony of Browning and Eckmann, who both unequivocally stated that the
inflow wall did not cause damages to Kopplow’s remainder property, and the
testimony of Rion, who stated that the water surface elevation on Kopplow’s
property would be the same in a 100-year storm whether or not the inflow wall
was present.  Both Browning and Rion stated that in a 100-year flood, the
inflow wall would be underwater by ten feet, and would not hold any water in
such an event.  The City argues that in the face of such unequivocal evidence,
the jury must have improperly considered the impact of the entire Detention Facility
on Kopplow’s remainder property when answering Question No. 2, as evidenced by
its note to the trial court.  

In addition, the City
contends that the Campbell rule applies, and therefore prevents Kopplow
from recovering severance damages.  The City concedes that the easement taken
was indispensible to the Detention Facility project; however, it maintains that
the inflow wall is not a substantial part of the property devoted to the
project and Kopplow’s remainder damages are not inseparable from those caused
by the taking.  See Schmidt, 867 S.W.2d at 778.  Because the entire
Detention Project consisted of over 200 acres, the easement condemned by the
City to build the inflow wall constituted a small fraction of the property
devoted to the project.  Moreover, the potential increased flooding to the
remainder was caused by the berm, not the inflow wall.  Thus, the City argues
that Kopplow cannot meet its burden under the exception to the Campbell
rule.  See id.  

Kopplow responds that it
is entitled to severance damages because the condemnation caused special damage
to its property that prevents development of the property without extensive
reclamation.  Kopplow contends that the instant situation is nearly identical
to the facts in State v. McCarley, 247 S.W.3d 323 (Tex. App.—Austin 2007,
pet. denied).  In McCarley, the State took a “corner clip” consisting of
836 square feet from the landowner for a highway expansion project.  Id.
at 328.  The evidence at trial demonstrated that the taking altered the
drainage on the remainder property and made it impossible for the landowner to
obtain the permits necessary to develop it.  Id. at 324.  The Austin Court
of Appeals upheld the award of remainder damages, holding that the damages arose
from the use of the corner clip itself, and not from the State’s use of the
existing right-of-way or other property.  Id. at 330.  

We find McCarley
distinguishable, however, because in that case the evidence clearly showed that
the part taken caused damages to the remainder property.  See id.  In
contrast, after reviewing the evidence in this case, it is undisputed that the
part taken did not cause damages to Kopplow’s remainder property.  Thus, we
agree with the City that the evidence is legally insufficient to support the
jury’s affirmative answer to Question No. 2.  See City of Keller, 168
S.W.3d at 810 (evidence is legally insufficient when the record discloses a
complete absence of evidence of a vital fact).  Further, we agree that pursuant
to Campbell, Kopplow is not entitled to compensation for the potential
damage to the uncondemned portion of its property resulting from the berm,
because the berm is not on land acquired from Kopplow by condemnation.  Schmidt,
867 S.W.2d at 778-79.  Accordingly, we sustain the City’s first issue, and
reverse the award of remainder damages to Kopplow. 

We next address the
City’s contention that Kopplow’s inverse condemnation claim is premature. 
Although Kopplow plead for damages for inverse condemnation, it now contends
that a separate inverse action was not appropriate or necessary in light of the
already pending statutory condemnation proceeding because it was entitled to
recover for all reasonably foreseeable damages naturally flowing from the
statutory condemnation action.  See City of La Grange v. Pieratt, 142
Tex. 23, 175 S.W.2d 243, 246 (1943) (“In a proceeding for the condemnation of a
part of a tract of land for street or road purposes, it is presumed that the
amount of damages allowed covers all lawful elements of damages, whether direct
or consequential, that could reasonably have been foreseen and determined at
the time of condemnation; and where a part of a tract of land is condemned for
street or road purposes, the owner cannot recover in a subsequent proceeding
for consequential damages to the remainder of the land which he ought
reasonably have foreseen and presented in the condemnation proceeding.”).  Assuming
Kopplow did pursue an inverse claim at trial,[2] the City contends that such a
claim is not yet ripe, and can be pursued in the future.  A “taking” by
flooding is a specific type of inverse condemnation.  In Tarrant Regional
Water Dist. v. Gragg, 151 S.W.3d 546, 555 (Tex. 2004), the Texas Supreme
Court held that isolated instances of increased flooding do not amount to a
taking; rather, repeated increased flooding is required.  The City argues that,
to date, Kopplow’s property has not flooded, and if it were to flood, Kopplow
could seek legal redress at that time.  See Allen v. City of Texas City,
775 S.W.2d 863, 866 (Tex. App.—Houston [1st Dist.] 1989, writ denied) (“A cause
of action for damaging land does not lie for anticipated future damages that
have not yet occurred, but accrues at the time land is actually damaged, and is
governed by the two-year statute of limitations.”). 

Kopplow responds that it
did not seek damages merely for future flooding, but also for the inability to
develop its remainder property absent an expensive reclamation project, which
constituted an injury that accrued prior to trial.  Kopplow further contends
that it cannot bring a valid inverse condemnation claim in the future if the
property at issue was the subject of a previous, proper statutory condemnation
action.  See Dahl ex rel. Dahl v. State, 92 S.W.3d 856, 861-62
(Tex. App.—Houston [14th Dist.] 2002, no pet.).  

We agree that Kopplow’s
inverse condemnation claim is premature.  In order for flooding (and any
reclamation associated with raising a floodplain) to amount to a physical
taking, the flooding must be repeated.  In Howard v. City of Kerrville,
75 S.W.3d 112, 117 (Tex. App.—San Antonio 2002, pet. denied), this court held
that no physical taking had occurred where the construction of a dam raised the
landowner’s floodplain and subjected him to potential flooding.  “In the case
of flood-water impacts, recurrence is a probative factor in determining the
extent of the taking and whether it is necessarily incident to authorized
government activity, and therefore substantially certain to occur.”  Gragg, 151
S.W.3d at 555.  A single flood event does not generally rise to the level of a
taking.  Id.  “The recurrence requirement assures that the government is
not held liable for taking property when a project’s adverse impacts, and by
implication its benefit to the public, are too temporal or speculative to
warrant compensation.”  Id.  

Further, we are not
persuaded that Kopplow is barred from bringing a subsequent inverse
condemnation claim.  The Dahl court held that the appellants’ inverse
condemnation claim was defective where the appellants’ pleadings demonstrated
that their inverse condemnation claim covered the identical property
lawfully condemned by the State in a previous proceeding.  Dahl, 92 S.W.3d
at 862-63.  Here, in contrast, the property for which Kopplow seeks remainder
damages is not the identical property that was condemned by the
City.  As discussed earlier, the City took an easement on which to build the
inflow wall, while Kopplow seeks compensation for damage to the remainder of
his 18-acre fee property.  

In conclusion, we affirm
the portion of the trial court’s judgment awarding Kopplow $4,600 as compensation
for the part taken by the City.  We reverse the portion of the trial court’s
judgment awarding Kopplow $690,000 for remainder damages, and render judgment
that Kopplow take nothing on its claim for remainder damages.

Cross-Appeal

Kopplow presents two
issues in its cross-appeal: (1) the trial court erred in excluding evidence of the
value of the whole property before considering the benefit of Kopplow’s vested
right to develop the property in accordance with its existing site development
permit; and (2) the trial court erred in submitting a proximate cause question,
because compensability of remainder property damages is a question of law for
the court.  Due to our holding that the evidence is legally insufficient to
support the jury’s award of remainder damages, we conclude that any issue
related to damages is moot.  Because the City’s use of the condemned property
did not cause damages to Kopplow’s remainder, there can be no compensation for
damage to the remainder.  Kopplow’s issues on its cross-appeal are therefore
overruled.

Conclusion

 

Based on the foregoing
analysis, we affirm the portion of the trial court’s judgment awarding Kopplow
$4,600 as compensation for the part taken by the City.  We reverse the portion
of the trial court’s judgment awarding Kopplow $690,000 for remainder damages,
and render judgment that Kopplow take nothing on its claim for remainder
damages.

 

Phylis J. Speedlin, Justice

 

 

 

 

 









[1]
Campbell v. United States, 266 U.S. 368 (1924).





[2] “In an inverse-condemnation suit, a property
owner seeks compensation for a taking that has allegedly already occurred and
requests just compensation from the government. The general elements of an inverse condemnation are: ‘(1) an
intentional act of a government entity; (2) accomplished for a public purpose;
(3) that damages or takes property from a private citizen.’”  State, Tex.
Water Development Bd. v. Hearts Bluff Game Ranch, Inc., 313 S.W.3d 479,
486 (Tex. App.—Austin 2010, pet. filed).  “The essence of an inverse condemnation proceeding is
that the government has intentionally taken or unreasonably interfered with an
owner’s use of property and the property owner is attempting to recover
compensation for the lost or impaired rights.”  State v. Brownlow, No.
08-0551, 2010 WL 3365948, at *2 (Tex. Aug. 27, 2010).